The PEOPLE of the State of
Colorado, Petitioner,

v.

Ann Marie NORD and Albert
Zook, Respondents.

No. 88SC496.

Supreme Court of Colorado,
En Banc.

April 9, 1990.
Rehearing Denied April 30, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Russel, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, and Jaydee K. Bachman, Deputy State Public Defender, Denver, for respondents.

Chief Justice QUINN delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *People v. Nord and Zook,* 767 P.2d 750 (Colo.App. 1988). In reversing the defendants' convictions for criminal mischief and remanding the case for a new trial, the court of appeals held that the trial court erred in denying the defendants' request for a transcript of the preliminary hearing at state expense and that the trial court's error required a new trial without regard to any consideration of prejudice. Although we agree with the court of appeals that the trial court erred in denying the defendants' request for a free transcript, we conclude that the error was harmless beyond a reasonable doubt. We therefore reverse the judgment of the court of appeals and remand the case to that court for reinstatement of the judgments of conviction.

## I.

The defendants, Ann Marie Nord and Albert Zook, were charged in the County Court of Jefferson County with the class 4 felony of criminal mischief, § 18–4–501, 8B C.R.S. (1986), for knowingly causing damage to the property of Martin Marietta Company in the amount of three hundred dollars or more on September 27, 1985.[1] The charge was based on the defendants' act of splashing human blood on the interior windows and walls of a laboratory building at the Martin Marietta complex in Jefferson County, and thereby causing damage to carpeting near the windows, as part of a demonstration in protest of Martin Marietta's involvement in the production of MX missiles.

The defendants waived their right to counsel and elected to represent themselves at a preliminary hearing conducted before the county court on October 25, 1985. The prosecution called two witnesses at the preliminary hearing. Kenneth Ives, a spacecraft technician at Martin Mar-

---

1. The defendants also were charged with second degree burglary of a building, § 18–4–203(1), 8B C.R.S. (1986), but this charge was later dismissed by the district court on motion of the district attorney. A third defendant was also charged with and convicted of criminal mischief, but did not appeal her conviction.

ietta, testified that at approximately 8:15 a.m. on September 27, 1985, he saw the defendants spilling what appeared to be human blood on the windows inside the space-support building at the Martin Marietta complex. The prosecution's other witness was Paul Magor, a Jefferson County Deputy Sheriff. Magor testified that at approximately 8:22 a.m. he was called to Martin Marietta's space-support building, that he was directed to the defendants who were in the hallway of a building which had blood on its windows, that the defendants had two bags or briefcases containing carpentry tools, plastic cups, and various documents protesting the work of the Martin Marietta company, and that he later determined that Martin Marietta sustained damage in the amount of $330. At the conclusion of the preliminary hearing, the court ordered the defendants bound over to the district court for trial and scheduled an arraignment in the district court on November 12, 1985.

At the arraignment the defendants, after receiving a thorough advisement by the court of their right to counsel and the risks of self-representation, reaffirmed their decision to represent themselves. The defendants filed a written request, supported by affidavits of their financial condition, for a free transcript of the preliminary hearing in order to prepare for trial. The affidavit of Ann Marie Nord stated that she was a Catholic nun and lived and worked with other nuns in providing emergency care for women and children, that she worked part time at odd jobs such as painting and housecleaning and contributed her earnings to a communal account to pay her share of the religious community's expenses, and that she received approximately $20.00 per month for personal spending. The affidavit of Albert Allen Zook stated that he was engaged as a volunteer in various peace projects and worked part time as a house painter and in a soup kitchen, but that his living expenses exceeded his income. The district court denied the defendants' request for a free transcript of the preliminary hearing, ruling that the defendants' affidavits were too conclusory and that their financial inability to pay for a transcript was "due to their own decision to engage in [volunteer] pursuits ..." The defendants at the arraignment entered not guilty pleas, and the case was set for trial on March 4, 1986.

On January 24, 1986, the defendants filed a motion for reconsideration of their request for a free transcript of the preliminary hearing and supported their motion with detailed financial affidavits. Nord's affidavit indicated that her gross total income on her last federal tax return was $1600, that her monthly income was $200, and that her monthly expenses amounted to $215. Zook's affidavit stated that his total income on his last federal tax return was $500, that his gross monthly income was $100, and that his total monthly expenses and debts amounted to $985.[2] The trial court denied the motion for reconsideration, ruling again that the defendants' indigency was voluntary and also that they lacked the expertise to make effective use of the transcript in their defense.

The defendants filed a pretrial notice of their intent to raise at trial the affirmative defense of choice of evils, § 18–1–702, 8B C.R.S. (1986), claiming that the production of MX missiles created an imminent public danger of such gravity that the urgency of avoiding the injury posed by this danger outweighed the desirability of avoiding any danger caused to Martin Marietta's property. The trial court ruled that the facts and circumstances underlying this claimed defense were insufficient as a matter of law to constitute a justification for the act of criminal mischief charged against the de-

**2.** Zook's affidavit also stated that he was married and that his wife earned $900 per month as a practical nurse. Were it not for the total family expenses and debts listed in Zook's affidavit, a closer question on indigency would be presented on the basis of total monthly income of Zook and his wife. However, as we later discuss in the text, the People do not challenge the sufficiency of Zook's showing of indigency, and in light of the total family indebtedness listed in his affidavit, Zook qualified as an indigent for purposes of the request for a free transcript.

fendants.[3]

Prior to the scheduled trial the prosecution provided the defendants with the statements of all prosecutorial witnesses and reports received from Martin Marietta concerning the incident in question. The jury trial commenced on the scheduled date of March 4, 1986. The prosecution in its case-in-chief elicited testimony from several Martin Marietta employees who recounted their observations of the defendants on September 27, 1985, at the space-support building at the Martin Marietta complex.

The defendants, according to these witnesses, went to the hallway of the second floor of the building, where employees were at work developing software for the MX missile, splashed blood on the walls and windows, distributed a document to employees that purported to be an "indictment" against Martin Marietta for its production of MX missiles, and waited for security guards or the police to come to the scene. Some of the blood dripped onto drapes next to the windows and onto the hallway carpeting below the windows. The prosecution presented testimony from janitorial staff employees establishing that the blood stained the carpeting and, because the stains could not be removed, the carpeting had to be replaced. The prosecution also presented documentary evidence establishing that the cost of replacing the carpeting was $332.44. Kenneth Ives, the spacecraft technician who testified at the preliminary hearing, did not testify at trial. The prosecution, however, did present testimony from Deputy Sheriff Phillip Magor, the other prosecution witness at the preliminary hearing. Magor testified at trial essentially to the same matters that he testified to at the preliminary hearing.

Both defendants testified at trial. They admitted that they splashed human blood on the windows of the Martin Marietta building, that the blood spilled onto the surrounding area and did some damage to the carpeting, and that they had in their possession several tools and the document described by Deputy Sheriff Magor. They basically claimed that they did not "knowingly" cause any property damage because they were not "practically certain" that any such damage would occur, and that the damage itself did not amount to $300 or more. With respect to the issue of damage, the defendants called a carpet cleaner who expressed the opinion that the cost of removing the blood stains from the carpeting would be approximately $40.

The trial court instructed the jury on the crime of class 4 felony criminal mischief (damage of $300 or more) and the lesser offenses of misdemeanor criminal mischief (damage of $50 to $500) and petty offense criminal mischief (damage of less than $50). *See* § 18-4-501, 8B C.R.S. (1986). The jury found the defendants guilty of class 4 felony criminal mischief. The trial court granted the defendants' applications for probation and sentenced the defendants to a term of sixty days in the county jail as a condition of probation.

---

3. The choice of evils defense, codified at section 18-1-702, 8B C.R.S. (1986), states as follows:
 (1) Unless inconsistent with other provisions of sections 18-1-703 to 18-1-707, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reasons of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

 (2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. When evidence relating to the defense of justification under this section is offered by the defendant, before it is submitted for the consideration of the jury, the court shall first rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.

 The propriety of the trial court's ruling on the choice of evils defense is not now before us, and we express no opinion on that issue.

The defendants appealed their convictions. The court of appeals reversed their convictions and remanded the case for a new trial. The court initially ruled that, because the defendants came within the indigency guidelines with respect to their eligibility for a court-appointed attorney,[4] the trial court erred "in denying [them] the status of indigents merely because it concluded that their indigency was voluntary." 767 P.2d at 751. The court of appeals then went on to hold that, because of their indigency, the defendants were entitled to a free transcript of the preliminary hearing "upon a timely request without particularization of need" and that "[c]ourts will not indulge in a *post facto* review of whether the failure to provide a transcript of a preliminary hearing prejudiced the defendant." *Id.* at 752.[5] We granted the People's petition for certiorari to consider whether the court of appeals correctly determined that the defendants were entitled to a free transcript of the preliminary hearing and, if so, whether the failure of the trial court to grant the defendants' request for the transcript was harmless error.

## II.

"[J]ustice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake v. Oklahoma,* 470 U.S. 68, 76, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). The Due Process and Equal Protection Clauses of the Fourteenth Amendment are implicated when a state creates "differences in access to the instruments needed to vindicate legal rights" on the basis of the "financial condition of the defendant." *Roberts v. LaVallee,* 389 U.S. 40, 42, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) (per curiam). The Fourteenth Amendment, therefore, imposes upon the state the obligation to provide an indigent defendant with those basic instruments and services essential to his or her right to adequately defend against a criminal charge. *See Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) (plurality opinion) (state must provide indigent defendant with a free transcript of former trial that ended in mistrial when defendant makes claim of need for transcript for second trial and no adequate substitute will meet defendant's trial preparation needs); *Gardner v. California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1967) (indigent prisoner entitled to free transcript of evidentiary hearing at *habeas corpus* proceeding in order to present new petition before higher state court when there was no adequate substitute for the transcript); *Roberts,* 389 U.S. 40, 88 S.Ct. 194 (indigent defendant entitled to free transcript of preliminary hearing for use at trial); *Long v. Dist. Court of Iowa,* 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966) (per curiam) (indigent defendant must be furnished free transcript of state *habeas corpus* proceeding for use on appeal).

This is not to say that a defendant who is financially unable to retain private counsel is automatically entitled to a free transcript or other ancillary services

---

**4.** The indigency guidelines applicable to this case for the appointment of counsel were set forth in Chief Justice Directive 85–27, which was distributed to all trial courts in the state in February 1985.

**5.** The defendants had also requested the trial court to appoint an investigator to assist them and to provide them with funds to pay the travel expense of witnesses. The trial court denied the request, and the court of appeals concluded that the trial court did not abuse its discretion in so ruling, stating:

Here, defendants' motion for the use of an investigator and for expenses of witnesses gave no hint of the purpose for the witnesses' testimony or of the nature of the services to be performed by the investigator. It did not, in our opinion, demonstrate why such services and expenses would be either necessary or helpful to the defendants in the presentation of any proper evidence.

Thus, even given the defendants' status of indigency, they did not establish a proper basis for demanding the provision of these ancillary services, and the court did not abuse its discretion in denying those services to them.

*Nord and Zook,* 767 P.2d at 752. The defendants did not seek certiorari review of the court of appeals' disposition of this aspect of their appeal, and we do not address it in this opinion.

upon request. The mere fact that the defendant is represented by a court-appointed attorney does not necessarily mean that the defendant thereby is financially unable to pay for a transcript of a prior proceeding. A finding of indigency for one purpose, in other words, does not render the defendant indigent for all purposes. *Medina v. Dist. Court*, 189 Colo. 516, 517, 543 P.2d 62, 64 (1975). When faced with ·a defendant's request for a free transcript of a prior judicial proceeding, therefore, a trial court must determine initially whether the defendant is in fact financially unable to pay for the transcript and then whether the transcript, rather than some other alternative, will meet the defendant's trial preparation needs.

 The initial burden of establishing indigency for purposes of obtaining a free transcript is on the defendant. *See Nikander v. Dist. Court*, 711 P.2d 1260, 1262 (Colo.1986). We hasten to add, however, that a defendant need not be "destitute" in order to be considered "indigent." The ultimate consideration is whether the defendant "on a practical basis" lacks the necessary funds to pay for the transcript. *Id.* In determining the defendant's indigency the trial court should consider the defendant's complete financial situation, including real and personal property, dependency obligations, and necessary expenses and debts, and then balance assets against liabilities and income against basic living expenses. *Id.* The trial court's determination, though entitled to some deference, is nonetheless "subject to careful scrutiny" because it affects the basic constitutional right of an accused to defend against a criminal charge. *Id.*

The value of a preliminary hearing transcript to the defense of a criminal case is self-evident. After remarking in *Gonzales v. Dist. Court*, 198 Colo. 505, 602 P.2d 857

(1979), that the transcript not only enhances the defendant's ability to prepare an adequate defense but also may serve as a "vital impeachment tool for use in cross-examination of the State's witnesses," we went on to emphasize the importance of making the transcript available sufficiently in advance of the trial itself:

> As a practical matter, the transcript must be available to defense counsel prior to trial if it is to be useful as an impeachment and trial preparation tool.... The defendant's lawyer should not be forced to rely on his memory of the preliminary hearing, or notes prepared at the hearing, to establish inconsistencies between testimony at the hearing and at trial.... Providing the preliminary hearing transcript for the first time at trial is thus not an adequate alternative to providing the transcript before the trial.

198 Colo. at 507, 602 P.2d at 858. (Citations omitted). The same observations apply even more cogently to a *pro se* defendant. A trial court, therefore, should not require a defendant to make a showing of a particularized need for the transcript. *Britt*, 404 U.S. at 228, 92 S.Ct. at 434.[6] Unless the record irrefutably shows the contrary, the need for a preliminary hearing transcript, or some adequate alternative, is to be presumed.

 If a trial court is satisfied that there is an adequate alternative to a full transcript—such as, for example, a tape recording of the preliminary hearing or access to the services of the court reporter for reading back stenographic notes of the prior testimony—then the court may require the defendant to resort to the alternative. *Medina*, 189 Colo. at 517, 543 P.2d at 63. In so ruling, however, the trial court should carefully develop a record for appellate review on this issue by stating the reasons why it believes such alternative

---

6. The defendants concede in their brief that when the request for a free transcript of former testimony is made as a delaying tactic, the request may properly be denied. *E.g., United States v. Smith*, 605 F.2d 839 (5th Cir.1979). The defendants also acknowledge that a court's failure to provide a complete transcript because of an unanticipated mechanical failure of re-

cording equipment does not abridge an indigent defendant's right to equal protection of the laws. Whether the unavailability of a transcript due to a mechanical failure in recording equipment, where no adequate substitute for the transcript is available, might abridge the defendant's right to a fair trial is a question not before us in this case and on which we express no opinion.

will provide the defendant with the substantial equivalent to the transcript.

### III.

█ In light of the foregoing principles, we turn to the circumstances of this case. The court of appeals held that the defendants "came within the eligibility income guidelines for a determination of indigency" with respect to the appointment of counsel and for that reason were entitled to a free transcript of the preliminary hearing. *Nord and Zook*, 767 P.2d at 751. As discussed above, a determination that a defendant is financially unable to retain counsel, and thus qualifies for the appointment of an attorney at state expense, does not necessarily render the defendant indigent for all purposes. The People, however, do not challenge the sufficiency of the defendants' showing of indigency before the trial court, and rightly so, because the defendants' financial affidavits demonstrate their indigency for purposes of a free transcript. Moreover, the fact that the defendant Nord had voluntarily undertaken religious activities which resulted in limited income, was a volunteer in various peace projects, and only worked on part time jobs, provided no justification for the trial court's denial of the defendants' request for a free transcript. The People also concede that an indigent defendant is not required to demonstrate a "particularized need" for a free transcript. With these concessions aside, the People argue that the court of appeals erred in its resolution of the case for two reasons: first, the transcript would have been of no use to the defendants in defending against the charge; and second, if indeed the defendants were entitled to a free transcript, the error in denying their requests was harmless. We will address these arguments separately.

### A.

While a post-trial analysis of a trial record might well disclose that a preliminary hearing transcript would not have been useful to the defendants, and that, therefore, the trial court's denial of the defendants' requests was harmless error, the issue of an indigent defendant's need for the transcript must be determined on the basis of the factual circumstances existing at the time at which the requests for the transcript are made. The defendants requested the preliminary hearing transcript at their arraignment on November 12, 1985, and again shortly thereafter, on January 24, 1986, in order to prepare adequately for the trial scheduled for March 4, 1986. Under such circumstances, it was incumbent upon the trial court to presume the existence of need for the transcript or some adequate alternative, unless the contrary was clearly demonstrated. The state of the record as it existed at the time of the defendants' requests for the preliminary hearing transcript does not support the contrary proposition that the transcript would have been of no benefit to the defendants in their defense of the charge.

█ The trial court denied the defendants' requests for the transcript simply because their income-limiting life-styles were voluntarily chosen and because, in the court's view, they would not be able to make effective use of the transcript in their defense. In so ruling, the trial court erred.

The fact that the defendants' religious activity and voluntary work in peace projects necessarily limited their income-producing potential was not an appropriate basis for denying the defendants' requests for the transcript. The defendants' religious activities and involvement in peace projects were of long duration and were not asserted as a pretext for obtaining at state expense what they believed would be a useful tool in their defense. Furthermore, the defendants had the constitutional right to represent themselves in defense of the charge, *e.g., Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Romero,* 694 P.2d 1256 (Colo.1985), and it was not the prerogative of the court, which already had determined that the defendants' exercise of this constitutional right was made with full knowledge of its associated risks and hazards, to deny the defendants' requests on the basis of an unsubstantiated and speculative opin-

ion regarding the defendants' legal ability to make effective use of the transcript. In our view, the trial court's ruling was tantamount to requiring the defendants to make a particularized showing of need tailored to their respective capability of making effective use of the transcript in their defense and, in that respect, imposed a constitutionally impermissible burden on the defendants. *See Britt,* 404 U.S. at 228, 92 S.Ct. at 434. We therefore conclude that, under the circumstances of this case, the trial court's denial of the defendants' requests for a free transcript was violative of the defendants' rights to due process and equal protection of the laws. *See, e.g., Britt,* 404 U.S. 226, 92 S.Ct. 431; *Gardner,* 393 U.S. 367, 89 S.Ct. 580; *Long,* 385 U.S. 192, 87 S.Ct. 362; *see also Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

### B.

We now turn to the People's claim that the trial court's failure to provide the defendants with a free transcript of the preliminary hearing was harmless error. The court of appeals, in reversing the defendants' convictions, did not engage in a harmless error analysis, but instead held that the trial court's failure to grant the defendants' requests for a preliminary hearing transcript was reversible error without regard to any consideration of prejudice. We reject the court of appeals' resolution of this aspect of the case.

■ Although some constitutional rights are so basic to a fair trial that their violation can never be considered harmless, *e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (denial of counsel to indigent defendant charged with felony); *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (admission of coerced confession in criminal trial); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (trial before judge having financial interest in result), the unconstitutional denial of an indigent defendant's request for a preliminary hearing transcript is not one of them. *See, e.g., United States v. Rosales–Lopez,* 617 F.2d 1349 (9th Cir.1980) (failure of trial court to provide indigent defendant with transcript of suppression hearing, although an error of constitutional dimension, was harmless where there were only two minor discrepancies between testimony at suppression hearing and trial testimony); *United States ex rel. Moore v. Illinois,* 577 F.2d 411 (7th Cir. 1978) (although trial court erred in failing to provide indigent defendant with transcript of preliminary hearing at which an allegedly suggestive confrontation took place between defendant and rape victim, error was harmless), *cert. denied,* 440 U.S. 919, 99 S.Ct. 1242, 59 L.Ed.2d 471 (1979); *see also United States ex rel. Cadogan v. LaVallee,* 428 F.2d 165 (2nd Cir.1970) (failure to provide indigent defendant with transcript of suppression hearing not prejudicial where alleged discrepancies between suppression testimony and trial testimony were trivial and transcript would not have provided defendant with any significant assistance in defense of charge), *cert. denied,* 401 U.S. 914, 91 S.Ct. 887, 27 L.Ed.2d 813 (1971). A reviewing court, however, cannot characterize a constitutional error as harmless unless it is satisfied after a careful scrutiny of the entire record that the error was harmless beyond a reasonable doubt. *E.g., Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966); *LeMasters v. People,* 678 P.2d 538 (Colo.1984); *People v. Myrick,* 638 P.2d 34 (Colo.1981). If there is a reasonable possibility that the constitutional error might have contributed to the conviction, the error cannot be viewed as harmless. *E.g., Chapman,* 386 U.S. 18, 87 S.Ct. 824. If, on the other hand, a review of the entire record discloses no such reasonable possibility, then the error properly may be deemed harmless beyond a reasonable doubt. *E.g., Harrington,* 395 U.S. 250, 89 S.Ct. 1726; *LeMasters,* 678 P.2d 538.

■ Our review of the record, including the transcript of the preliminary hearing, satisfies us that the constitutional error in this case was harmless beyond a reason-

able doubt. The preliminary hearing testimony of Kenneth Ives, a spacecraft technician at Martin Marietta, consisted of his observations of the defendants as they applied what appeared to be blood on the windows of the space-support building at Martin Marietta. Ives did not testify at trial, and there was nothing in his preliminary hearing testimony that possibly could have benefited the defendants.

The other preliminary hearing witness was Deputy Sheriff Magor, who testified at trial to essentially the same facts recounted by him at the preliminary hearing—that he responded to a call to the Martin Marietta complex; that he observed the defendants in a hallway of one of the buildings that had blood on its windows; and that the defendants had tools, plastic cups, and copies of a protest document in their possession. What is significant here is that prior to trial the defendants, in their notice to assert the choice of evils defense, acknowledged their participation in the conduct charged against them. Since Magor's preliminary hearing testimony related to his observations of the scene of the crime subsequent to the commission of the offense, it would have been of no possible benefit to the defendants' ability to prepare adequately for trial or to defend against the charge at trial. Moreover, prior to trial the defendants had been provided with discovery, which included all statements of prosecutorial witnesses and all reports in the possession of the district attorney.

Finally, at the trial itself, the defendants admitted that they had splashed human blood on the windows of a Martin Marietta building as an ethical and political statement in protest against the production of MX missiles, that the blood spilled onto the surrounding area and did some damage to the carpeting, and that they had in their possession the tools and document described by Magor. The defendants' theories of defense against the charge were that they were not practically certain that damage would be caused to Martin Marietta property as a result of their actions and that any such damage did not amount to $300 or more. These theories of defense were not dependent upon or related in any

degree to the preliminary hearing testimony of Ives and Magor. The record in this case, in addition to containing overwhelming evidence of guilt, dispels any reasonable possibility that the trial court's failure to provide the defendants with a free transcript of the preliminary hearing contributed in the slightest to their conviction for criminal mischief.

We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgments of conviction.