FITZGERALD *v*. THE PEOPLE.

VENUE, CHANGE OF — *sufficiency of petition.* Where several counties are attached for judicial purposes, a petition for change of venue, founded upon prejudice of the inhabitants, must show that such prejudice exists in all of the counties so attached.

SAME — *second application.* A second application in the same cause, for change of venue, is addressed to the discretion of the court, and error cannot be assigned upon refusal to grant it.

JUROR — *competency of.* A juror having expressed himself strongly against the accused before trial, the fact was brought to the attention of the court upon motion for a new trial. *Held*, that a new trial should have been allowed.

*Error to District Court, Arapahoe County.*

INDICTMENT for murder upon which the prisoner was found guilty. The counties of Weld and Douglas were attached to the county of Arapahoe for judicial purposes. Previous to the trial in the court below, the prisoner moved for a change of venue, upon a petition setting up that the inhabitants of Arapahoe county were prejudiced against him, but no mention of the counties of Douglas and Weld was made in this petition. The motion was denied, and the prisoner then filed an amended petition, in which he alleged that the inhabitants of all the counties above named were prejudiced against him.

The motion for new trial was supported by the affidavit of Geo. Shallcross, of which the material part is given in the opinion of the court.

Messrs. PURKINS & COOK, for plaintiff in error.

Mr. V. D. MARKHAM, for defendants in error.

EYSTER, J. (after stating the facts).   On his first assignment of error the plaintiff avers that there was error in the refusal of the court below to allow him a change of venue on his first petition and affidavit.    Upon an examination of his petition, we find, that he sets out *only*, that there is such a prejudice in the minds of the people of *Arapahoe County* against him, that he cannot there expect a fair and impartial trial.   If there had been then no other counties attached to Arapahoe county for judicial purposes, this petition and affidavit would have been sufficient, and it would have been error in the court below to have refused to grant it.   But at that time the counties of Weld and Douglas were attached to the county of Arapahoe for judicial purposes and, in pursuance of law, jurors were drawn from those counties as well as from Arapahoe county to make up the panel of jurors, and although his petition complied with the letter of the law, we do not think it complied with its spirit, and we can see

VOL. I. — 8

no error in the action of the court below in that behalf. The next assignment of error is, we think, equally groundless. After the refusal of the court below to allow a change of venue, on the first petition presented, for the grounds above stated, the plaintiff in error filed a second and amended petition for a change of venue, in which he supplied the omission of his former petition, by adding thereto the counties of Douglas and Weld, and alleged the existence of the prejudice complained of in his first petition. This was only an amendment of his first petition. A change of venue under our statute, when properly applied for, is a matter of right, and is of course. The second application was addressed to the discretion of the court, and, we think, was properly so addressed, and we can see no error in its refusal in this instance to grant the motion.

The third and last error is of a more important character. That the court below erred in denying the motion for a new trial, when it was shown that one of the jurors who sat upon the trial was biased and prejudiced against the plaintiff in error, and had formed and expressed an opinion of his guilt before he took his oath and seat as a juror.

This exception, under all the circumstances in this case, we think is a good one, and on it this judgment must be reversed. Trial by jury is of most ancient origin. It has always, in all ages and countries where it has been adopted and used, been esteemed and held to be one of the most cherished and carefully guarded rights of the people. In *magna charta* the right of trial by jury was as earnestly and as determinedly insisted upon as the great right of *habeas corpus*, and the people of England were no less jealous and watchful in guarding and protecting the purity of the jury box than they were determined and earnest in asserting it as a great popular right. It is, in the words of an eminent English author, "the palladium of the civil rights of the people," and it is the boast of her people that their parliaments and their courts have always directed their best efforts to maintain its purity. In our own land

of boasted liberty, trial by jury is one of the great consti-
tutional land-marks, and any violation of the purity of its
sacred precincts is looked upon by all as a great crime.
Common custom and the sanction of the law permits a
party in a suit to have a juror solemnly sworn to make true
answers to such questions as may be asked of him touching
his competency as a juror ; and, before he is permitted to be
sworn as a juror in the particular cause, he is required,
under the solemnity of an oath, to answer all such reason-
able and proper questions as may be put to him touching
his interest, bias or affection in the cause, as to the parties.
If, upon such examination, it appears that the juror is, from
any cause, under any influence of fear, favor or affection,
or that he has in any way and on any cause made up an
opinion as to the merits of the cause, he is justly and prop-
erly set aside by the court as an incompetent juror in that
cause.

An examination of the facts complained of in this cause
reveals to us that the juror, William Morgan (to whom
objection was made), was in the neighborhood of the place
where the homicide occurred at the time of its occurrence,
and that he had heard from different parties a narration of
the facts in the case.   He declares that, from what he had
heard of the transaction, he had formed and expressed an
opinion as to the guilt or innocence of the accused.   The
juror, on being further interrogated, stated, that he thought
he could give the prisoner a fair trial, and, to a further
question, he answered that he could give the accused a fair
and impartial trial without being influenced by that opinion.
Whether the refusal to permit this juror, under such cir-
cumstances, to be set aside for cause, was error to reverse
the judgment, we will not here decide, but, coupled with
what was made apparent to the court on the motion for a
new trial by the affidavit of Shallcross, we think that there
was error in the court below in refusing to allow the plain-
tiff's motion.   Shallcross swears that, on the morning of the
day of the trial and before the jury were impaneled in the
cause, "I heard William Morgan express strong conviction

of the defendant's guilt; one of the expressions he used was this: 'I would hang the son of a bitch on the evidence I already have, unless stronger testimony than I have heard could be brought in his favor,' and numerous other sentiments of a like import that I cannot now remember.''

Such expressions, we think, exhibit malignity and vindictiveness on the part of the juror toward the accused, inconsistent with the purity required in the jury box, and we think that when the defendant stood before the court with that uncontradicted affidavit in his hand, and from the verge of the grave appealed for a trial in his cause by an impartial jury, it was his right to be heard, and the refusal to grant him that right was such error as requires us to reverse the judgment of the court below, which is done, and the cause is remanded and a new trial awarded.

*Reversed.*