The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Franklin Omar ESCANO,
Defendant–Appellant.

No. 90CA2021.

Colorado Court of Appeals,
Div. IV.

July 16, 1992.
Rehearing Denied Aug. 13, 1992.
Certiorari Denied Jan. 11, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

McMichael, Benedict & Multz, Carroll E. Multz, Grand Junction, for defendant-appellant.

Opinion by Judge JONES.

Franklin Omar Escano, defendant, appeals the judgment of conviction entered upon jury verdicts finding him guilty of

possession of 28 grams or more of cocaine and of special offender status. We affirm.

On September 8, 1989, defendant and a companion drove a tractor-trailer rig up to the scales at the port of entry located on Interstate 70 in Loma, Colorado, where an inspection officer was conducting tax assessments and safety inspections of commercial vehicles. The inspector asked defendant to produce his driver's license, medical card, log book, and vehicle permits, but defendant was only able to produce a New York state learner's permit.

In response to the inspector's inquiries, the defendant stated that he and his companion had flown from New York to Salt Lake City to retrieve, from an empty parking lot, a broken down truck which belonged to his uncle. Defendant informed the inspector that he and his companion were driving the empty tractor-trailer back from Salt Lake City to New York.

The inspector later testified that he found defendant's statements to be commercially unreasonable because: it is financially impractical to fly two drivers across the country to pick up a truck; broken rigs are not picked up in empty parking lots; it is extremely expensive, and therefore unusual, to drive an empty trailer across the country; and the route defendant had chosen was a 200 mile round trip detour off the direct route from Salt Lake to New York. In addition, defendant's vehicle was 4,000 pounds overweight for that model of trailer when empty. Based on the foregoing information, the inspector informed his supervisor that he had a suspicious contact.

The inspection officer asked defendant and his companion to open the padlocked doors to the trailer and observed both acting nervously. The doors to the trailer's interior were opened with a key retrieved from the tractor by defendant. Inside, the inspector saw wooden cargo pallets piled up and secured in place by loadlocks. The inspector entered the trailer and saw cardboard between the slats of the pallets.

The inspector asked defendant what was behind and underneath the pallets, to which defendant responded that he did not know. In response to the inspector's request, de-fendant helped move some of the pallets, which revealed several rows of cardboard "U-Haul" cartons that had been taped shut. The inspector then left the trailer and detained defendant and his companion in the port of entry station while he called the Colorado State Patrol, reporting that he had a rig with hidden cargo.

A State Patrol Officer arrived, hand-cuffed defendant and his companion together, and arrested them for driving without a license. Entering the trailer, the officer slit open one of the cartons, removed an opaque, brown package, and slit the package open, finding that it contained a white powder. The officer called the county drug task force, which arrived with a drug detection dog whose conduct indicated the powder was a drug. A field analysis conducted on the white powder revealed that it tested positively as being cocaine. Defendant and his companion were informed that they were also under arrest for possession of controlled substances. After a search warrant was obtained and executed, over 1,000 pounds of cocaine was found packed in the U-Haul cartons.

Upon being charged with possession of cocaine, defendant filed a motion to suppress evidence and statements. The People filed a motion requesting that defendant's case be joined with that of his companion, as a co-defendant, to which defendant filed a written objection. A joint hearing was held on both defendants' motions to suppress, after which the trial court denied that part of the motions requesting suppression of evidence. The court also subsequently granted the People's motion for joinder.

Both defendants were found guilty by a jury and convicted of possession of 28 or more grams of cocaine with intent to dispense, sell, and distribute, and of being special offenders. Defendant was sentenced to 24 years and one day in prison.

I.

Initially, defendant contends that the trial court erred in granting the motion for

joinder of his case with that of his companion. He argues that the court's denial of his written objection to the motion for joinder prevented him from receiving a fair trial. We disagree.

Defendant objected to joinder on the grounds that his defense and that of his companion were antagonistic, and because statements made to a State Patrol officer by his companion were not admissible as evidence against him. The trial court ruled that the statements made by defendant's companion could be limited by an admonition to the jury and that, with only two co-defendants, the jury could weigh and consider the evidence without any spill-over effect. The court also found that both defendants' defenses consisted of a general denial and were, therefore, not antagonistic.

■ A defendant is entitled to a severance of trial as a matter of right if there is material evidence admissible against one but not all of the parties and admission of that evidence is prejudicial to the party against whom the evidence is not admissible. Section 16–7–101, C.R.S. (1986 Repl. Vol. 8A); Crim.P. 14; *Peltz v. People*, 728 P.2d 1271 (Colo.1986).

■ To determine whether separate trials are required, a trial court must determine whether admitted evidence is so inherently prejudicial that the jury would not be able to limit its use to its proper purpose. Otherwise, a motion for joinder is addressed to the discretion of the trial court, and will be affirmed absent a showing of an abuse of discretion and actual prejudice to the moving party. *See Peltz v. People, supra.*

■ When an out-of-court statement of a co-defendant does not make reference to the co-defendant, severance should be granted only when it is necessary to promote a fair determination of the guilt or innocence of one or more defendants. The court should make this determination by considering, among other factors, whether, in view of the number of offenses and defendants charged and the complexity of the evidence offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense and as to each defendant. *People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979) (quoting ABA Standards on *Joinder and Severance*, § 13–3.2 (1978)).

■ Here, the allegedly prejudicial statements were made to a drug enforcement officer by defendant's companion, who had given conflicting accounts as to whether he had traveled from New York to Los Angeles with, or without, the truck's trailer in tow. No reference was made, in these statements, to defendant.

In making its severance determination, the trial court properly considered the number of offenses and defendants charged, and the complexity of the evidence. *See People v. Gonzales, supra.* The court determined that the admitted evidence was minimal, could be cured with an admonition to the jury, and further determined that:

> It's not a situation where we have so many co-defendants that there exists a danger of confusion on the jury's part as to what evidence is admissible against one and [not] the other. It should be relatively straightforward in terms of there only being two co-defendants. The jury should be able to properly weigh and consider the evidence produced as to each Defendant without any danger of any spillover effect.

Moreover, before the statements were elicited, the court issued a precise and comprehensible limiting instruction admonishing the jury that the statements were "not to be considered for any purpose as to [defendant]."

There is a strong presumption that the jury followed the trial court's instructions, *People v. Moody*, 676 P.2d 691 (Colo.1984), and we cannot say, here, that the court abused its discretion in finding that the jury would heed the instructions. Hence, as in *Peltz v. People, supra,* the trial court did not abuse its discretion in concluding that the jury would have no difficulty in limiting the testimony to its proper purpose given the ancillary and minimal prejudicial impact of the statements on defendant.

■ We also perceive no error in the trial court's refusal to grant severance as a matter of discretion. Factors to be considered in determining whether denial of severance constitutes an abuse of discretion include: 1) whether the number of defendants or the complexity of the evidence is such that the jury will probably confuse the evidence and law applicable to each defendant; 2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another; and 3) whether the defenses presented are antagonistic. *Peltz v. People, supra; People v. Warren,* 196 Colo. 75, 582 P.2d 663 (1978).

■ The record reflects that, at the time the trial court considered defendant's objection to the joinder motion, defendant's attorney conceded that there would be no antagonistic defense. In fact, both defendants presented a defense based upon lack of guilty knowledge. Thus, their defenses did not specifically contradict each other. Therefore, severance is not required. *People v. Toomer,* 43 Colo.App. 182, 604 P.2d 1180 (1979).

Under these circumstances, the trial court did not abuse its discretion in granting the motion for joinder.

## II.

Defendant next contends that the trial court erred in denying his motion to suppress the evidence seized from the trailer. He argues that the court erred in ruling that the trailer searches and seizures were reasonable and legal. We do not agree.

Initially we note that, because we resolve the issues raised by defendant's objections to the search and seizure, we deem it unnecessary to consider his contention that he had a reasonable expectation of privacy in the trailer's cargo.

## A.

As a preliminary matter, we must determine whether the port of entry inspection officer had legal authority to enter and examine defendant's trailer.

The trial court concluded that the inspector "had a right to inspect the trailer or even a duty to do so" pursuant to § 24–33.5–212(1)(b), C.R.S. (1988 Repl.Vol. 10A). However, this statute confers a duty to inspect a vehicle's interior and its cargo only upon officers of the Colorado State Patrol.

The trial court also determined that the inspector's actions are authorized by § 42–4–234(3), C.R.S. (1991 Cum.Supp.) and 49 C.F.R. § 396.9(a) (1991). Section 42–4–234(3) provides that the department of public safety shall adopt rules and regulations based upon guidelines and standards contained in the current rules and regulations of the United States Department of Transportation relating to inspection.

Regulations of the Colorado Department of Public Safety, applicable here, refer to guideline federal regulations in this area. 8 Code Colo.Reg. 1507–1 (1990). Entitled Safety Rules and Regulations Concerning Minimum Standards for the Operation of Commercial Vehicles, these state regulations, *inter alia,* specify levels of inspection for any vehicle that meets the definition of a commercial vehicle, as defined under § 42–4–234(1)(a), C.R.S. (1991 Cum. Supp.).

A "Level I" inspection is defined as follows:

> As a minimum, a Level I inspection shall include an inspection of the vehicle inspection report, emergency equipment and *cargo securement* plus driver's license, medical certificate ... parts and accessories set forth in Chapter III, Subchapter B, of Title 49, Code of Federal Regulations, as revised October 1, 1989, to include Appendix G.

8 Code Colo.Reg. 1507–1 (1990) (emphasis added).

■ Pursuant to the provision of this inspection regulation allowing the inspection of "cargo securement," and pursuant to the referenced federal regulations which incorporate "General rules for protection against shifting and falling cargo" under Part 393, "Parts and Accessories Necessary for Safe Operation," 49 C.F.R. § 393.-100 (1991), we conclude that the port in-

spection officer was authorized to enter into and to inspect within the trailer for purposes of observing any cargo secured therein.

Accordingly, the trial court did not err in determining that the port of entry inspection officer's actions were legally authorized.

### B.

■ The state patrol officer's authority to examine the trailer's cargo arose pursuant to § 24–33.5–203, C.R.S. (1988 Repl.Vol. 10A). In that statute, the Colorado State Patrol is authorized to "enforce or aid in enforcing all state laws pertaining to motor ... vehicles, their equipment, weight, cargoes, and licenses...." In addition, § 24–33.5–212(1)(b), C.R.S. (1988 Repl.Vol. 10A) defines the powers and duties of the Colorado state patrol to:

Require the operator of any vehicle to stop and ... submit to a complete inspection of such vehicle and the equipment, interior, cargo ... when there is *reasonable cause to believe that the vehicle is being operated in violation of any law of this state regulating the operation of vehicles....* (emphasis added)

In light of the foregoing statutory authority, the question here is whether a state patrol officer who has "reasonable cause" to inspect a vehicle, may do so, even in apparent violation of the Fourth Amendment.

■ Warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment, but inspections of commercial property may be unreasonable if they are not authorized by law, are unnecessary for the furtherance of governmental interests, or are so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will be inspected from time to time by government officials. *Exotic Coins, Inc. v. Beacom*, 699 P.2d 930 (Colo.1985).

■ Here, an inspection of defendant's commercial vehicle is authorized by statute and such inspections are regularly per-

formed, pursuant to statute, by port of entry inspectors. *See* § 42–8–104, C.R.S. (1991 Cum.Supp.). These statutory provisions may be enforced by a state patrol officer pursuant to § 24–33.5–203, C.R.S., (1988 Repl.Vol. 10A), and this enforcement may include the inspection of vehicle cargo when an officer has "reasonable cause to believe that the vehicle is being operated in violation of any law." Section 24–33.5–212(1)(b), C.R.S. (1988 Repl.Vol. 10A).

■ Pursuant to the foregoing statutory provisions and the implementation of the same, an operator of a commercial vehicle should reasonably expect that frequent and regular inspections may be performed at port of entry weigh stations and that such search and inspection may be enforced by a member of the Colorado state patrol. Accordingly, we conclude that the frequent and predictable port of entry inspections, which are authorized pursuant to state and federal statutes, do not violate the Fourth Amendment when enforced by state patrol officers in accordance with the provisions of § 24–33.5–212(1)(b), C.R.S. (1988 Repl. Vol. 10A).

■ The trial court found several facts that would cause a state patrol officer, called to enforce a port of entry inspection, to conclude that defendant's vehicle was being operated in violation of the law, including:

Underage drivers; no medical cards; no log book; no valid permits to operate; rig repeatedly reported empty; trailer overweight some 4,000 pounds; trailer expensively transported empty; no prospective load to pick up all the way to New York; why padlock an empty trailer; no hazardous cargo placard that might explain overweight; an extra driver unnecessary; unnecessary expense to fly drivers to Salt Lake City; rig picked up after repair at open parking lot instead of a garage; parking lot access gave no opportunity to discuss repairs with mechanic; drivers didn't know what repairs were done; rig 200 miles round-trip off the Interstate 80 direct route to New York; no registration available for the trailer; no VIN number on the trac-

tor door; defendants' nervous demeanor on removal to station office before trailer opened.

These findings are supported by the record and explicitly indicate that there was reasonable cause to believe that defendant was operating the vehicle in violation of the law.

In view of the trial court's findings of fact combined with the dictates of § 24–33.5–212(1)(b), we conclude that this inspection of commercial property was authorized by law and was not in violation of the Fourth Amendment. *See United States v. Hernandez,* 901 F.2d 1217 (5th Cir.1990). Hence, the trial court properly denied defendant's motion to suppress.

We affirm the judgment of the trial court.

STERNBERG, C.J., and DAVIDSON, J., concur.