The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Thomas P. FURY, Defendant–Appellant.

No. 91CA1695.

Colorado Court of Appeals,
Div. IV.

Oct. 7, 1993.

Rehearing Denied Nov. 4, 1993.

Certiorari Denied May 9, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Katherine M. Clark, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Lindy Frolich, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Thomas P. Fury, appeals from the judgment entered on a jury verdict finding him guilty of vehicular eluding, driving under suspension, violation of a restricted license, and reckless driving. We affirm.

On August 12, 1991, an officer of the Arvada Police Department saw the defendant's car turn north through an intersection, accelerating as it did so. The officer turned on his siren and overhead lights and began to follow the car, but he lost sight of it. Soon thereafter, the officer was flagged down by a motorist who told the officer that she had just seen the defendant's car stuck in a ditch a few blocks down the street.

At trial, the motorist testified that she had been traveling southbound when she saw the defendant's car, which was traveling northbound, trying to pass the car in front of it. In so doing, the defendant's car partially crossed over the double yellow line into the southbound lane causing the motorist to move her car over to the far right side of her lane to avoid a collision.

The investigating officer went to the place specified by the motorist and found the defendant's vehicle in a ditch by the side of the road. The defendant's wife was sitting in the driver's seat and the defendant was seated on the passenger's side. Initially, they both told the officer that the wife had been driving the car. The officer told the defendant that he did not believe this and warned him that it is a crime to supply misinformation to a police officer. Defendant then admitted that he was the driver.

An accident investigation officer arrived at the accident scene. The defendant and the officers all got inside the van to continue with the accident investigation. During the conversation which ensued, the defendant admitted that he had attempted to elude the police car. Defendant was then advised of his constitutional rights, which he agreed to waive. After the defendant repeated his earlier confession, he was placed under arrest.

I.

On appeal, defendant first contends that the trial court erred by refusing to grant a mistrial following a discovery violation on the part of the prosecution. We disagree.

When the accident investigation officer arrived at the scene of the incident he interviewed eyewitnesses and wrote down notes from those interviews. During discovery, the defendant received a copy of the diagram from the accident report but did not receive a copy of the officer's notes taken at the accident scene.

The trial court acknowledged that the prosecution had committed a discovery violation by not producing those notes prior to trial. And, after hearing the officer's testimony in-camera, it ruled that the witness could not give expert opinions nor would the witness be allowed to testify to the path of the defendant's car. The witness was allowed to testify concerning the diagram previously furnished the defendant.

Defendant then moved for a mistrial which the trial court denied because it found that there was no prejudice to the defendant resulting from the discovery violation.

Defendant claims that the failure to grant a mistrial denied him his right to due process of law because he was unable to hire an expert to evaluate the officer's notes and because defense counsel could not use the notes in his cross-examination of the prosecution's witnesses. Thus, the defendant asserts, defense counsel was unable to prepare an adequate defense, and as a result, he was denied his right to a fair trial. We perceive no reversible error.

■ Reversal for failure to disclose certain information to the defendant is mandated only if the information might have affected the outcome of the trial. *People v. Thatcher*, 638 P.2d 760 (Colo.1981). Thus, to warrant reversal, a defendant must show that the prosecution's discovery violation could have affected the jury's decision.

■ Here, the trial court reasoned that the defendant could have hired an expert witness to examine the diagram of the accident scene despite the fact that the defense had not received the notes taken by the officer. We agree with the trial court's conclusion. Adequate information was furnished to the defendant to allow him to consider hiring an expert.

■ A trial court is allowed a significant amount of discretion in deciding a motion for a mistrial. Accordingly, its decision will not be disturbed on appeal "absent a gross abuse of discretion and prejudice to the defendant." *People v. Collins*, 730 P.2d 293, 303 (Colo. 1986). Here, there was no abuse of discretion.

## II.

Defendant next asserts that the trial court committed reversible error by refusing to instruct the jury that eluding a police officer is a lesser-included offense of vehicular eluding. We disagree.

■ If one charged offense establishes every essential element of another charge, it is a lesser-included offense. *People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974). Thus, to be lesser-included it must be impossible to commit the greater offense without also committing the lesser one. *People v. Martinez*, 640 P.2d 255 (Colo.App.1981).

The statutory test adopted in *People v. Rivera, supra,* requires us to compare the vehicular eluding statute, § 18–9–116.5, C.R.S. (1993 Cum.Supp.), with the eluding a police officer statute, § 42–4–1512, C.R.S. (1993 Repl.Vol. 17), and determine whether the greater offense of vehicular eluding contains every essential element of the lesser offense of eluding a police officer.

■ Upon applying that test to the offenses at issue, we ·conclude that eluding a police officer is not a lesser-included offense of vehicular eluding.

The crime of eluding a police officer, § 42–4–1512, provides:

Any operator of a motor vehicle who the officer has reasonable grounds to believe has violated a state law or municipal ordinance, who has received a visual or audible signal such as a red light or a siren from a police officer driving a marked vehicle showing the same to be an official police, sheriff, or Colorado state patrol car directing the operator to bring his vehicle to a stop, and who willfully increases his speed or extinguishes his lights in an attempt to elude such police officer, or willfully at-

tempts in any other manner to elude the police officer, or does elude such police officer commits a class 2 misdemeanor traffic offense.

The statutory language requires that the operator of a motor vehicle receive a visual or audible signal from a police vehicle, such as a red light or siren, directing the operator to stop. This signal must come from a marked vehicle showing it is an official police, sheriff, or Colorado State patrol car.

The crime of vehicular eluding, § 18-9-116.5, states:

Any person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he is being pursued by said peace officer, and who operates his vehicle in a reckless manner, creating a substantial risk of bodily injury to another person, commits vehicular eluding. Vehicular eluding is a class 5 felony; except that vehicular eluding which results in bodily injury to another person is a class 4 felony and vehicular eluding which results in death to another person is a class 3 felony.

To be convicted of vehicular eluding, the motor vehicle operator does not have to receive any type of signal from a marked police car. Rather, the latter offense requires only that the driver know or reasonably should know that he is being pursued by a police officer. The fact that the driver knew or should have known of the pursuing police officer could be proven in the absence of an audible or visual signal from the officer. While proof of the use of a siren or light may be admitted on this charge to show defendant's knowledge, that element can otherwise be established. For example, if a driver whose license has been revoked sees a police officer and that police officer recognizes the driver and knows that driver's license is revoked, the driver may attempt to elude the police officer without a visual or audible signal coming from the police vehicle.

Hence, it is possible to commit the crime of vehicular eluding without establishing all the essential elements of eluding a police officer, and the trial court did not err in rejecting defendant's instruction.

### III.

Defendant next asserts that the trial court erred by not requiring the prosecution to name a specific victim of the vehicular eluding charge and by allowing the jury to select the victims by way of a special interrogatory. We disagree.

Count I of the information charged that the defendant "operated his vehicle in a reckless manner, creating a substantial risk of bodily injury to another person...." At trial, the prosecution asserted that it did not have to name a specific victim because the words "another person" could refer to anyone. The defendant, however, argued that, by not requiring the prosecution to specify a victim, the jurors would be able to conclude that a risk of bodily injury was created towards different people and still find the defendant guilty.

The trial court agreed with defendant's argument, and, in order to avoid such possibility, the trial court required that the jurors unanimously agree as to at least one victim by providing them with a special interrogatory listing all possible victims. The jurors unanimously found that there was a substantial risk of bodily harm to four of the six people listed on the interrogatory.

▪▪ The clear intent behind the vehicular eluding statute is to protect members of the public from the dangers created by a driver attempting to elude a police officer. Therefore, we conclude that the prosecutor is not required to specify one particular victim; any member of the public at large could be a victim. Nevertheless, the trial court did not commit error by allowing the jury to select a victim listed on the special interrogatory. Indeed, by supplying the special interrogatory, the trial court ensured that the jury had to agree unanimously as to at least one victim, and thus, it protected the defendant from an inconsistent verdict. *See Kogan v. People,* 756 P.2d 945 (Colo.1988).

### IV.

The defendant next asserts that the trial court erred in denying his motion to suppress

the statement he made to the police before he was advised of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.

The trial court denied the defendant's motion because it found that the defendant's statements were voluntary and that the defendant was not in custody when he made the statements.

Defendant claims that the statements he made before he was read his *Miranda* rights should have been suppressed because he was in custody at the time of the interview inside the officer's van. We disagree.

■ A person must be accorded a *Miranda* advisement only when he or she has been subjected to the constraints associated with an arrest. *People v. Trujillo,* 784 P.2d 788 (Colo.1990).

■ The test used to determine if an accused person is in custody is whether a reasonable person in the suspect's position would consider himself significantly deprived of his liberty. *People v. Black,* 698 P.2d 766 (Colo.1985). Such a determination is to be made on a case-by-case basis. *People v. Archuleta,* 719 P.2d 1091 (Colo.1986).

Among the factors to be considered when deciding if a suspect is in custody are the following:

> The time, place, and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Trujillo, supra,* 784 P.2d at 791.

■ Furthermore, the roadside questioning of a motorist detained pursuant to a routine traffic stop does not necessarily constitute "custodial interrogation" for purpose of the rule established in *Miranda.* *People*

*v. Archuleta, supra.* See *People v. Garrison,* 176 Colo. 516, 519, 491 P.2d 971, 973 (1971) ("The fact that the defendant was asked to sit in the police car does not turn [accident] investigation into custody....").

■ Here, neither officer told the defendant that he could not leave the interview. The officers made no threats or promises to the defendant. The officer testified that it is standard procedure to have the people involved in a car accident sit in the police van and explain how the accident occurred. And, in order to investigate the accident, it was necessary to know who had been driving the defendant's vehicle.

Here, the officer's preliminary questioning of the defendant was conducted in order to determine the nature of the accident. And, as soon as the defendant made statements which the police officers believed might give rise to a more serious charge, the questioning was suspended and the defendant was advised of his *Miranda* rights. Also, the interview was conducted during daylight hours, next to a busy road, and the van door was left open. See *People v. Milhollin,* 751 P.2d 43 (Colo.1988) (physical setting is one factor determining whether suspect is in custody).

Under these circumstances, the record supports the trial court's ruling.

### V.

After being advised of his *Miranda* rights by the officer, the defendant decided to waive these rights and admitted that when the accident occurred he had been trying to avoid contact with the police because of his driving record. He asserts these post–*Miranda* statements should have been suppressed. Again, we perceive no error.

■ Defendant correctly argues that in order for post–*Miranda* statements to be admissible, a court must first ascertain whether they were offered voluntarily. *People v. Mendoza–Rodriguez,* 790 P.2d 810 (Colo.1990). The trial court's findings of fact concerning the voluntariness of the defendant's statements are entitled to deference and will not be overturned if supported by

competent evidence in the record. *People v. McIntyre,* 789 P.2d 1108 (Colo.1990).

■ The trial court determined that the officer's statement to the defendant that it was illegal to give misinformation to a police officer did not constitute a threat. There is competent evidence to support that determination, and thus, denial of the motion to suppress was not error.

Judgment affirmed.

CRISWELL and RULAND, JJ., concur.