The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

David Richard **CARRILLO,** Defendant–Appellant.

No. 95CA0299.

Colorado Court of Appeals, Div. III.

March 20, 1997.

Rehearing Denied June 5, 1997.

Certiorari Granted Nov. 24, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul Koehler, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Richard E. Mishkin, Lakewood, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, David Richard Carrillo, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder, conspiracy to commit first degree murder, and contributing to the delinquency of a minor. Defendant contends the trial court erred by rejecting his challenges for cause to several prospective jurors, removing a juror during deliberations, and denying several pre-trial motions. We affirm.

Defendant was accused of participating in a gang killing. Although he did not fire the shot that killed the victim, the evidence showed he was one of several complicitors. Defendant was tried jointly with a co-defendant, and both were convicted.

## I.

Defendant contends the trial court abused its discretion in rejecting his challenges for cause to several prospective jurors. We disagree.

Even if a potential juror expresses some prejudice or predisposition, a disqualification for cause is not required if the trial court is reasonably satisfied that the prospective juror is willing to be fair and to follow instructions. *People v. Schmidt*, 885 P.2d 312 (Colo.App.1994). In making its determination, the trial court may give considerable weight to a potential juror's statement that the juror can fairly and impartially serve on the case. *People v. Sandoval*, 733 P.2d 319 (Colo.1987).

■ The trial court is in the best position to assess by personal observation the attitudes and states of mind of a potential juror. *People v. Fuller*, 791 P.2d 702 (Colo.1990); *People v. Schmidt, supra*. This includes evaluating what may appear to be inconsistent responses to difficult questions. *See People v. Veloz*, 946 P.2d 525 (Colo.App. 1997). Hence, a trial court's denial of a challenge for cause will be set aside only if the record discloses a clear abuse of discretion. *People v. Fuller, supra; People v. Schmidt, supra*.

Here, defendant contends the court should have removed five prospective jurors because two initially stated they would expect the defendant to testify on his own behalf, and three others expressed some doubt about the presumption that defendant was innocent. Defendant exercised peremptory challenges on all five prospective jurors.

■ Defendant raises the issue with respect to one of these five jurors for the first time on appeal in his reply brief. His contentions regarding that juror will therefore not be considered. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

■ One of the remaining four knew the victim's father and on one occasion had worked with him. However, the juror had not met the victim and had not spoken with the victim's father since the killing. While the juror expressed the opinion that, if he were the defendant, he would not like to have himself on the jury, he also stated that he would listen and base his verdict on what he heard.

■ With respect to the other three jurors, the record reveals that, after further questioning, all three agreed they would set aside any contrary personal beliefs, follow the court's instructions, not judge defendant adversely should he not testify, and make their decisions based upon the law and the evidence adduced at trial. In addition, one of the three, separately challenged because of his heavy work schedule, stated he would attempt to give the proceedings his full attention.

None of the jurors' responses reveals an unyielding belief that the defendant was guilty or an unwillingness to make their decision based upon the law and evidence adduced at trial. In these circumstances, regardless of whether we might have reached a contrary result, we perceive no clear abuse of discretion by the trial court in refusing to dismiss these jurors for cause. *See People v. Sandoval, supra; People v. Ferrero*, 874 P.2d 468 (Colo.App.1993).

## II.

Defendant next asserts the trial court's removal of a juror and substitution of an alternate during deliberations violated his constitutional right to a fair trial. We are not persuaded.

## A.

■ Crim. P. 24(e) provides that an alternate juror "shall not be discharged *until the jury renders its verdict* or until such time as determined by the court." (emphasis added) That language arguably conflicts with the present language in § 16–10–105, C.R.S. (1996 Cum.Supp.), which provides that an alternate juror "shall be discharged *when the jury retires to consider its verdict* or at such time as determined by the court." (emphasis added) We nevertheless conclude that the trial court had the authority under both the rule and the statute to replace the juror with an alternate during jury deliberations.

In *People v. Burnette*, 775 P.2d 583 (Colo. 1989), the supreme court addressed a situation in which the replacement of a juror with an alternate during deliberations violated both Crim. P. 24(e) and § 16–10–105, C.R.S. (1986 Repl.Vol. 8A), because at that time both required the court to discharge the alternate at the time the jury retired to consider its verdict. The court held the violation raised a presumption of prejudice that, if not rebutted, required reversal of any conviction obtained as a result of a verdict rendered by the improperly constituted jury. *See People v. Patterson*, 832 P.2d 1083 (Colo. App.1992).

In response, the General Assembly in 1990 amended § 16–10–105 to provide that an alternate juror "shall not be discharged until

the time the jury renders its verdict or until such time as determined by the court." Colo. Sess. Laws 1990, ch. 117 at 924. Crim. P. 24(e) was then amended to be consistent with the statute.

The next year the General Assembly again amended § 16–10–105 to provide that an alternate juror "shall be discharged when the jury retires to consider its verdict or at such time as determined by the court." Colo. Sess. Laws 1991, ch. 80 at 429–30. This time, Crim. P. 24(e) was not amended to be consistent with the new statutory wording.

The end result of the two statutory amendments is that § 16–10–105 now provides, as it did before the amendments, that an alternate juror is to be discharged when the jury retires to consider its verdict, with one important addition: The trial court in its discretion may dismiss the alternate at a different time.

■ Thus, while a trial court will ordinarily dismiss an alternate juror when the jury retires to consider its verdict, nothing in the plain language of the current statute prevents the trial court from dismissing an alternate juror *after*, as well as before, the jury commences deliberations. Rather, § 16–10–105 now permits the trial court to delay the discharge of the alternate juror if, for example, facilities are available to segregate the alternate during deliberations and if, because of the length or complexity of the trial, or because of the court's concern with personal circumstances of a juror, or both, the court perceives a likelihood that a juror may have to be replaced during deliberations.

To the extent the current statute might be deemed to be ambiguous, we read the legislative history as supporting our construction of it. *See* Hearings on H.B. 1118 before the House Judiciary Committee, 57th General Assembly, Second Session (January 30, 1990); Hearings on H.B. 1118 before the Senate Judiciary Committee, 57th General Assembly, Second Session (February 26, 1990); Hearings on H.B. 1076 before the House Judiciary Committee, 58th General Assembly, First Session (January 17, 1991); Hearings on H.B. 1076 before the Senate Judiciary Committee, 58th General Assembly, First Session (February 25, 1991).

The 1990 amendment to § 16–10–105, as originally introduced, would have read: "An alternate juror shall not be discharged until the jury renders its verdict." The purpose was to have an alternate available if during deliberations a juror became incapacitated or otherwise unable to continue.

However, the annual procedural omnibus bill submitted by the Colorado District Attorney's Council included a recommended "amendment to the amendment" that added the following additional phrase at the end of the original proposed amendment: "or at such time as determined by the court." The explanation given at the time it was introduced was that this would give the court discretion to dismiss a juror *before* the jury rendered its verdict, *contrary* to the preceding phrase, which affirmatively prohibited the discharge of an alternate until the jury reached its verdict. It was suggested that such discretion might be exercised, for example, in a relatively simple case in which it appeared the jury deliberations would be sufficiently brief that no alternate juror would likely be needed. The bill, with the amendment, passed without further discussion.

The 1991 amendment changed the time for dismissal of an alternate back to when the jury retired to deliberate. It was once again part of the District Attorney's procedural omnibus bill. The stated need for the change was that, in some districts, no facilities were available for segregating the alternate juror during jury deliberations.

Of significance, the stated purpose of the 1991 amendment was to "go back to the way things were, and that is, allow it to be at the discretion of the court." This reflects the mistaken notion that the discretion had been present in the original version of the statute rather than having been added the year before. Nevertheless, it does not indicate the General Assembly had changed its intent to give the trial court discretion to dismiss an alternate juror at a time *contrary* to that expressed in the preceding phrase, which would now include *after* the jury retired to consider the verdict.

We therefore conclude that the trial court had the authority under both Crim. P. 24(e)

and § 16–10–105 to replace a juror with an alternate after the jury deliberations had commenced. To the extent our construction of § 16–10–105 differs from that articulated in *People v. Montoya*, 942 P.2d 1287 (Colo. App.1996), we decline to follow it.

### B.

Defendant contends that, although the trial court had authority to replace the alternate juror during jury deliberations, it failed to take sufficient precautions to protect his right to a fair trial. We again disagree.

The supreme court in *People v. Burnette, supra*, concluded that, even though the violation of Crim. P. 24(e) and § 16–10–105 gave rise to a presumption of prejudice, that presumption could be rebutted if it could be shown that sufficient procedural safeguards were taken to ensure against prejudice to the defendant as a result of the replacement. These precautions include receiving assurances from both the remaining regular jurors and the alternate that the ability of the reconstituted jury to render a fair verdict will be unimpaired by the substitution.

We need not determine whether fewer precautions may be required if the replacement during jury deliberation complies with Crim. P. 24(e) and § 16–10–105 because we conclude, as did the division in *People v. Montoya, supra*, on the identical issue, that the trial court conducted a sufficient inquiry and took adequate precautions to comply with the supreme court's admonitions in *Burnette*.

Here, after announcing its verdict, the jury was polled. During the polling one juror stated he had reached a verdict different from that of the other jurors on one of the three charges.

The court sent the jury back to resume deliberations. A short time later, the jury informed the court that the juror in question had not heard all the testimony and deliberations and did not fully understand the charges and instructions. At that point, the court removed the juror and seated the alternate over the defendant's objection.

Inquiry by the court revealed that, from the time deliberations began, the alternate had no contact with anyone associated with the case, spoke with no one about the case, formed no opinions about the case, read no newspaper articles, listened to no radio programs, and followed the court's instructions. Although told by her daughter the case was mentioned on the news, the juror neither heard nor saw the report.

Likewise, the remaining jurors assured the court they could put aside the previous discussions and commence deliberations anew. Only after receiving those assurances did the trial court submit the case to the reconstituted jury, which then retired for deliberations and returned guilty verdicts on all three counts.

The trial court followed procedures sufficient to ensure that defendant would not be prejudiced, and defendant has failed to present any reason for otherwise concluding the jury was improperly tainted or that it could not put aside the previous discussions. In these circumstances, we find no reversible error. *See People v. Burnette, supra; cf. People v. Montanez*, 944 P.2d 529 (Colo.App. 1996).

### III.

Defendant next asserts the trial court erred by denying his motion to sever his trial. We conclude to the contrary.

Pursuant to § 16–7–101, C.R.S. (1986 Repl.Vol. 8A), a defendant is entitled to a severance as a matter of right if there is material evidence admissible against one but not all of the defendants and admission of that evidence is prejudicial to the defendant against whom the evidence is not admissible. In this context, prejudice means that the evidence would be so inherently prejudicial that the jury could not limit its use to its proper purpose. *Peltz v. People*, 728 P.2d 1271 (Colo.1986); *People v. Escano*, 843 P.2d 111 (Colo.App.1992); *see also* Crim. P. 14.

Even if severance is not required as a matter of right, a trial court may for other reasons abuse its discretion in refusing a motion for severance. Factors considered in determining whether denial of severance constitutes an abuse of discretion include: (1)

whether the number of defendants or the complexity of the evidence will cause the jury to confuse the evidence and law applicable to each defendant; (2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another; and (3) whether the defenses presented are antagonistic. *People v. Lesney,* 855 P.2d 1364 (Colo.1993); *People v. Barela,* 689 P.2d 689 (Colo.App.1984).

██ Here, defendant argues the trial court abused its discretion in denying the motion to sever because the prosecutor introduced testimony by one of the two gang members present at the shooting describing the manner in which the victim was killed and the role of the co-defendant in that killing. However, because the testimony did not refer to the defendant or mention his name, we conclude that the objectionable evidence was not so inherently prejudicial to defendant as to have required, despite the court's limiting instruction, severance as a matter of right under § 16–7–101 or Crim. P. 14. *See Peltz v. People, supra.*

██ Nor are we persuaded the trial court abused its discretion in not granting a severance based on any other considerations. Given the number of defendants and the relative simplicity of the evidence, it was unlikely the jury would be confused. In addition, the limiting instruction given was clear and concise, the defenses were not antagonistic, and the crime was one of mutual participation. *See People v. Adams,* 678 P.2d 572 (Colo.App.1984)(mutual participation of defendants a logical basis for refusing to sever). Hence, it was not an abuse of discretion to deny defendant's motion to sever. *See Peltz v. People, supra; People v. Gregory,* 691 P.2d 357 (Colo.App.1984).

## IV.

Defendant's next contention is that the trial court's failure to appoint second counsel to represent him until the day trial began violated his constitutional rights to assistance of counsel and equal protection of the laws. Again, we disagree.

██ Although a defendant has a constitutional right to the assistance of counsel, it does not necessarily follow that the defendant has a right to a second counsel merely because the public defender's office assigns two attorneys to similar cases or because the court appoints additional counsel for a codefendant. When, as here, the state provides competent counsel and that counsel ably and competently conducts the defense, the state has satisfied its constitutional obligation. *Valarde v. People,* 156 Colo. 375, 399 P.2d 245 (1965).

██ In addressing defendant's separate equal protection argument, the threshold question is whether the state action has resulted in dissimilar treatment of similarly situated individuals. If no such classification has occurred, the equal protection challenge must fail. *People v. Black,* 915 P.2d 1257 (Colo.1996); *People v. Young,* 859 P.2d 814 (Colo.1993).

██ Aside from the fact that different defendants may require differing defenses and staffing, an independent office of multiple attorneys may have separate staffing concerns, such as training. Defendant has therefore failed to demonstrate that, in receiving court-appointed counsel, he was similarly situated to defendants represented by the public defender's office.

As to the co-defendant in this case with court-appointed counsel, the court did not appoint additional counsel until shortly before trial. Defendant's earlier motion for second counsel was initially denied because he was then engaged in plea negotiations. Defendant did not renew his motion at the time the court appointed the second counsel for the co-defendant. When he did renew his request for second counsel, it was granted.

We conclude that defendant failed to demonstrate he was similarly situated to any codefendant, either when his initial motion for a second counsel was denied or when that of the codefendant was granted. *See Hatch v. Oklahoma,* 58 F.3d 1447 (10th Cir.1995).

## V.

Defendant next maintains the trial court violated his constitutional rights by denying his motions for free transcripts of the guilty

552

pleas and discovery of the plea agreements of certain witnesses. We find no reversible error.

■ The People concede, and we agree, that defendant was entitled to explore information about the plea agreements in order to attack the credibility of the witnesses. *See People v. Pate*, 625 P.2d 369 (Colo.1981). However, the record is unclear about the information available to defendant before trial.

■ Furthermore, error in denying a request for discovery before trial does not necessarily require reversal. If a review of the record reveals no reasonable possibility that the asserted error might have contributed to the conviction, it may be deemed harmless. *See People v. Nord*, 790 P.2d 311 (Colo.1990); *People v. Thatcher*, 638 P.2d 760 (Colo.1981); *People v. Fury*, 872 P.2d 1280 (Colo.App. 1993).

■ Here, only two of the individuals for whom defense counsel sought free transcripts testified at trial. On direct examination, both acknowledged their plea agreements and admitted they were entered in exchange for reduced sentences. Defendant cross-examined one of the witnesses and had the opportunity to cross-examine the other.

Under these circumstances, we are unable to discern how the discovery sought would have provided any further benefit to defendant. Accordingly, the error, if any, in denying the discovery motions must be deemed harmless. *See People v. Thatcher, supra; People v. Fury, supra; People v. Graham*, 678 P.2d 1043 (Colo.App.1983).

VI.

Defendant finally argues the trial court erred by denying his motion for change of venue. We disagree.

■ The existence of extensive pretrial publicity by itself does not necessarily create a right to change of venue. *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983). In the absence of evidence that the publicity was "massive, pervasive, and prejudicial," a defendant must demonstrate that any publicity had an actual adverse effect upon the jury

panel. And, the decision whether to grant a motion for change of venue is within the sound discretion of the trial court. *People v. McCrary*, 190 Colo. 538, 544, 549 P.2d 1320, 1325 (1976).

■ Here, the record reflects that the media coverage was not massive, pervasive, and prejudicial. Most of the newspaper articles merely reported the allegations and the current status of the proceedings. Many did not mention defendant, but instead focused on co-defendants or other crimes. Furthermore, during voir dire, jurors with any knowledge of the crime either stated they were capable of putting aside opinions already formed or were excused for cause.

In these circumstances, we perceive no abuse of discretion in denying the motion to change venue. *See People v. Bartowsheski, supra; People v. McCrary, supra; People v. Medina*, 185 Colo. 101, 521 P.2d 1257 (1974).

Judgment affirmed.

ROTHENBERG, J., specially concurs.

JONES, J., dissents.

Judge ROTHENBERG, specially concurring.

Although I conclude there was no gross abuse of discretion in the trial court's denial of defendant's challenge to a potential juror, I view this one ruling as being precipitously close to requiring reversal. I write separately because denials of for-cause challenges to prospective jurors in criminal cases are becoming a recurring, and perhaps avoidable, appellate issue.

Recently, another divided panel of this court addressed a similar situation. There, the trial court, *over the objection of both counsel*, denied defendant's challenge for cause to another highly questionable potential juror. There, as here, one member of the panel would have reversed an otherwise valid criminal conviction on that basis. *See People v. Veloz*, 946 P.2d 525 (Colo.App. 1997). The issue also arises frequently in unpublished opinions that go unnoticed by the bench and bar.

Here, one juror knew and had worked with the murder victim's father. Their contact was not superficial. Before the crime they had engaged in numerous, lengthy conversations and the victim's father had talked extensively about his family. Although the juror and the father had not spoken since the homicide, the juror had discussed the murder with other employees.

During *voir dire,* the juror made it clear he was very uncomfortable sitting as a member of this panel. He said he had formed certain opinions about the case which he had been "trying real hard to push away," but he was having difficulty doing so. It is self-evident that most jurors would be reluctant to serve on a jury involving the murder of a co-worker's family member, and would be uncomfortable at the prospect of having to face coworkers after the verdict, especially in the event of an acquittal. Jurors should not have to explain their verdict afterwards. *See* COLJI–Crim. No. 1:06 (1983) (mandatory instruction to jury upon discharge)

Nevertheless, the prosecution urged the trial court to deny the challenge for cause. The court agreed without comment, thus requiring defendant to remove the potential juror with a peremptory challenge.

A trial court has broad discretion to determine challenges for cause, and appellate courts have almost never interfered with that discretion. *Morgan v. People,* 624 P.2d 1331 (Colo.1981). However, the trial court's discretion is not unlimited. *See People v. Rogers,* 690 P.2d 886 (Colo.App.1984) (trial court abused discretion in denying challenge for cause where potential juror had close association with law enforcement establishment and crime scene in question); *Beeman v. People,* 193 Colo. 337, 340, 565 P.2d 1340, 1342 (1977) (trial court abused discretion in not excusing for cause juror whose daughter had possible earlier contact with defendant; "the most sincere assurances and good faith belief by the juror in her capacity to act impartially cannot compensate for factors which inherently produce prejudice"). *See also Fitzgerald v. People,* 1 Colo. 56, 58 (1867) ("If upon such examination it appears that the [potential] juror is, from any cause, under any influence of fear, favor, or affec-tion, or that he has in any way and on any cause made up an opinion as to the merits of the cause, he is ... an incompetent juror in that cause.")

I also recognize that trial judges may have problems obtaining a sufficient jury pool for serious felonies that have received pre-trial publicity. I further acknowledge that, although this case was tried in an urban court, the problem may be more acute in smaller communities. Notwithstanding these administrative difficulties, however, when a juror admits to preconceived notions about a case, especially based upon personal contact with a member of the victim's family, I view it as *extremely unwise* for a trial court to jeopardize an otherwise valid conviction and risk reversal and retrial by retaining a juror whose impartiality is questionable. That course of action becomes even more problematic in a case such as this in which the charge is first degree murder.

If error later is found in the court's denial of a for-cause challenge and if the defendant exhausted all peremptory challenges, reversal of the conviction is required despite the existence of overwhelming evidence of defendant's guilt. *See People v. Macrander,* 828 P.2d 234 (Colo.1992) (reversal required when defendant used peremptory challenge to remove prospective juror who should have been excused for cause and then exhausted all peremptory challenges; court rejected harmless error analysis). *But see United States v. McIntyre,* 997 F.2d 687 (10th Cir.1993) (fn.7) (erroneous denial of a for-cause challenge does not rise to the level of a constitutional violation; court applied harmless error analysis), *cert. denied,* 510 U.S. 1063, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994).

Judge JONES, dissenting.

I respectfully dissent from Part I of the dispositive opinion. I agree with defendant that a member of the venire panel should have been dismissed for cause, and therefore, I would reverse the judgment of conviction and remand for a new trial.

To protect a defendant's right to a panel of impartial jurors, the trial court must exclude prejudiced or biased persons from the jury.

*Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980); *People v. Ferrero,* 874 P.2d 468 (Colo. App.1993).

Such bias may be either actual or implied. Actual bias exists when a juror has a state of mind that prevents him or her from deciding the case impartially and without prejudice to one of the parties. Bias may be implied, however, when the prospective juror has a close relationship to a party or attorney in a case, or has had an important contact with the case, so as to create serious doubt about the prospective juror's impartiality, if not in fact then at least in appearance. *People v. Macrander,* 828 P.2d 234 (Colo.1992).

The applicable test is whether it appears the potential juror would render a fair and impartial verdict according to the law and based upon the evidence presented at trial. *People v. Fuller,* 791 P.2d 702 (Colo.1990); *People v. Arevalo,* 725 P.2d 41 (Colo.App. 1986); § 16–10–103, C.R.S. (1986 Repl.Vol.).

Although the trial court has broad discretion to determine challenges for cause, this discretion does not permit an appellate court to abdicate its responsibility to ensure that the requirements of fairness are fulfilled. *See Morgan v. People,* 624 P.2d 1331 (Colo. 1981).

Because failure to remove a juror for cause impairs the defendant's ability to change the ultimate composition of the jury, prejudice is shown per se when the defendant exhausts all his peremptory challenges and one of those challenges is expended on a juror who should have been removed for cause. *People v. Macrander, supra; People v. Prator,* 833 P.2d 819 (Colo.App.1992).

Here, the trial court refused to dismiss for cause a potential juror who knew and worked with the victim's father. This juror also had engaged in numerous, lengthy conversations with the victim's father, during which the father talked extensively about his family. And, although the potential juror had not spoken with the victim's father since the killing, the juror admitted he and other employees had discussed the killing and speculated as to what had happened. Indeed, he stated that, once defendant was arrested, he believed defendant to be guilty.

In addition, the juror conceded that he might be influenced by the fact that his own children were approximately the same age as the victim. He also acknowledged that he had formed some opinions about the case, that he would expect defendant to testify, and that it would be difficult to judge defendant fairly if he heard only one side of the story. He further indicated that, although he had been "trying real hard to push [his opinions] away," he could not do so. Finally, when asked, the juror stated that he would not want himself on the jury if he were defendant.

In my view, the trial court's failure to dismiss this juror for cause constitutes an abuse of discretion. The juror admitted preconceived notions and biases which made it appear doubtful that he could be fair. Although the juror was questioned extensively by both attorneys and by the trial court, the juror was, at best, ambivalent as to whether he could follow the court's instructions. In light of these concerns, when combined with the juror's personal acquaintance with the victim's father and continued employment with the same employer, I believe it was necessary for the trial court to excuse the juror for cause. *See Morgan v. People, supra; People v. Gurule,* 628 P.2d 99 (Colo. 1981); *Nailor v. People, supra.*

Accordingly, I would reverse the judgment and remand the cause for a new trial. Although, because I would reverse, I need not consider the issues addressed in Part II of the dispositive opinion, I do concur with that opinion on all other issues raised on appeal.

Additionally, except that I disagree with its concurrence with the dispositive opinion as to the judgment here, I share the concerns expressed by the specially concurring opinion regarding the difficulties faced by trial judges in providing bias-free jurors while at the same time obtaining sufficient jury pools to accommodate the increasing numbers of felony trials that must proceed in the face of extensive pre-trial publicity.