The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Earl William **CAMPBELL**, Defendant–Appellant.

No. 92CA2065.

Colorado Court of Appeals, Div. III.

Oct. 6, 1994.

Certiorari Pending Feb. 21, 1995.

See also, 847 P.2d 228.

328

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jacque Lyn Russell, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Anest & Rolfe, P.C., David S. Rolfe, Parker, for defendant-appellant.

Opinion by Judge KAPELKE.

Defendant, Earl William Campbell, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of aggravated robbery, felony theft, and three habitual offender counts. We affirm.

Defendant's convictions stem from the robbery of a grocery store on October 10, 1986. In July 1987, defendant was tried and convicted of aggravated robbery and theft. He was thereafter convicted of being an habitual offender and sentenced to life imprisonment.

On direct appeal, a division of this court reversed defendant's conviction and remanded the case for a new trial because the trial court had conducted the trial in defendant's absence without having first obtained a valid waiver of his right to be present at trial. *People v. Campbell,* 785 P.2d 153 (Colo.App. 1989).

At a hearing before his second trial, defendant indicated that he wanted to proceed *pro se* with advisory counsel and requested that his case proceed under the Uniform Mandatory Disposition of Detainers Act (UMDDA), § 16–14–101, et seq., C.R.S. (1986 Repl.Vol. 8A).

At a hearing on September 3, 1991, the court denied defendant's motion to proceed pursuant to the UMDDA and held that the

general speedy trial statute, § 18–1–405, C.R.S. (1986 Repl.Vol. 8B), applied to defendant's case. The court then set the case for trial.

On December 10, 1991, the day trial was scheduled to begin, defendant announced that he was unprepared for trial and moved for a continuance to investigate a possible alibi defense and to prepare a number of witnesses whose identities he had not disclosed to the prosecution. The trial court denied the motion.

Defendant then stated that, in light of the court's denial of his motion for a continuance and its rulings on a number of evidentiary issues, he did not believe he could effectively represent himself. He requested that his advisory counsel be appointed to represent him. Advisory counsel indicated that, if he were appointed as lead trial counsel, he would need additional time to prepare for trial. He therefore requested a continuance. The court granted defendant's request for appointment of his advisory counsel, and, after defendant agreed to waive his right to a speedy trial, the court granted the motion for a continuance and rescheduled the trial for May 12, 1992. On May 8, 1992, the court granted defendant's third request for a continuance and set the trial for November 3, 1992.

At trial, over defendant's objection, the court permitted the prosecution to introduce transcript testimony given at defendant's first trial by three police officers who were unavailable to testify at the second trial.

## I.

█ Defendant first contends that the trial court erred in ruling that the general speedy trial statute, and not the UMDDA, applied to his case. We disagree.

Our primary goal in determining the meaning of a statute is to ascertain and give effect to the intent of the General Assembly. In ascertaining the legislative purpose, we look first to the statutory language. When that language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction. *See Moody v. Corsentino*, 843 P.2d 1355 (Colo.1993);

*Woodsmall v. Regional Transportation District*, 800 P.2d 63 (Colo.1990).

█ When two statutes address the same subject matter, we must attempt to read them together and reconcile them so as to give effect to each statute. *City of Lakewood v. Mavromatis*, 817 P.2d 90 (Colo.1991); *Peoples Natural Gas v. Public Utilities Commission*, 698 P.2d 255 (Colo.1985).

█ Finally, when a statute specifies the particular situations in which it is to apply, it should generally be construed as excluding from its operation all other situations not specified. *Truck Insurance Exchange v. Home Insurance Co.*, 841 P.2d 354 (Colo. App.1992).

The general speedy trial statute and the UMDDA are two of several Colorado statutes implementing the speedy trial rights guaranteed to a criminal defendant under Colo. Const. art. II, § 16, and the Sixth and Fourteenth Amendments. *People v. Swazo*, 199 Colo. 486, 610 P.2d 1072 (1980); *see also People v. Higinbotham*, 712 P.2d 993 (Colo. 1986).

The general speedy trial statute provides that:

> If [a defendant's] trial results in a conviction which is reversed on appeal, any new trial must be commenced within six months after the date of the receipt by the trial court of the mandate from the appellate court.

Section 18–1–405(2), C.R.S. (1986 Repl.Vol. 8B).

The UMDDA provides that:

> Any person who is in the custody of the department of corrections ... may request final disposition of any *untried* indictment, information or criminal complaint pending against him in this state.

Section 16–14–102(1), C.R.S. (1986 Repl.Vol. 8A) (emphasis added).

Under the UMDDA, the defendant must be brought to trial on the untried charges of the indictment, information, or criminal complaint within ninety days or "such additional time as the court for good cause shown ... may grant" after the receipt by the court or the prosecuting official of such a request.

Section 16–14–104, C.R.S. (1986 Repl.Vol. 8A).

The UMDDA applies when a prisoner in the custody of the Department of Corrections has pending against him in Colorado other untried charges, unrelated to those that led to his incarceration. *Moody v. Corsentino, supra.*

Although defendant was incarcerated on unrelated charges prior to his second trial, we conclude that the UMDDA did not apply.

First, by its terms, the UMDDA applies only to untried charges. Defendant had been tried for his crimes in 1987, although the resulting convictions were reversed on appeal. Thus, while the charges against defendant were still pending, they were not untried. Accordingly, the trial court properly concluded that the UMDDA did not apply.

We recognize that, in proceedings under the UMDDA, if a specific provision of the general speedy trial statute and a specific provision of the UMDDA conflict, the UMDDA provision controls. *People v. Swazo, supra; see also People v. Newton,* 764 P.2d 1182 (Colo.1988).

However, this is not a situation in which two specific statutory provisions conflict. While the UMDDA is silent regarding the time within which a case must be retried following a reversal, the general speedy trial statute specifically addresses that situation. When the two statutes are read together, it becomes clear that the General Assembly intended the general speedy trial statute, and not the UMDDA, to apply to the retrial of cases reversed on appeal. *Cf. People v. Mascarenas,* 706 P.2d 404 (Colo.1985).

The General Assembly could, of course, have included in the UMDDA a provision bringing retrials of cases reversed on appeal within the reach of the statute. It did not do so. The UMDDA delineates the particular situations in which it is to be applied, and, because retrials of cases reversed on appeal are not specified in the statute, we conclude that the UMDDA does not apply to such cases. *See Truck Insurance Exchange v. Home Insurance Co., supra; Meyer v. Charnes,* 705 P.2d 979 (Colo.App.1985).

We also reject defendant's contention that, if the charges pending against him after the reversal of his conviction were not "untried" within the meaning of the UMDDA, his retrial on those charges violated his constitutional right not to be placed in double jeopardy.

When, as here, reversal is predicated upon errors of law rather than insufficiency of the evidence, remand for a new trial does not violate the double jeopardy clause. *Stafford v. People,* 165 Colo. 328, 438 P.2d 696 (1968); *Gomez v. Ensor,* 694 P.2d 869 (Colo.App. 1984); *see also* Colo. Const. art. II, § 18.

## II.

Defendant next contends that the trial court erred in denying his first motion for a continuance because the court thereby precluded defendant from exercising his right to represent himself. We disagree.

The decision to grant or deny a motion for continuance is within the sound discretion of the trial court, and the trial court's ruling may not be disturbed on appeal absent a clear abuse of discretion and prejudice to the defendant. *People v. Denton,* 757 P.2d 637 (Colo.App.1988).

Before the scheduled trial date, defendant had not indicated to the court that he was having any difficulty in preparing for trial or locating his witnesses. Under these circumstances, we conclude that the trial court's denial of defendant's motion for continuance was not an abuse of discretion.

Defendant could have continued to represent himself and proceeded to trial as scheduled, but he chose instead to have counsel appointed and to obtain a continuance of the trial date. Defendant has not demonstrated that he was prejudiced by the court's ruling; accordingly, we may not overturn it. *See People v. Denton, supra.*

## III.

Defendant's final contention is that the trial court erred in admitting the transcribed testimony given at his first trial by three police officers who were unavailable to testify at the second trial. More specifically,

defendant contends that, because he was not present during his first trial, he was deprived of the opportunity to assist in the cross-examination of the police officers and the admission of their testimony in the second trial therefore deprived him of his right to confront adverse witnesses. We perceive no reversible error.

Here, there were two eyewitnesses to the crime: the manager and an employee of the store that had been robbed. Both testified at the second trial, during which they described their confrontation with the robber and their interactions with the three police officers relative to the preparation of a composite drawing of the perpetrator and the viewing of several photo lineups. At the second trial, both witnesses positively identified defendant as the perpetrator.

To satisfy constitutional requirements of confrontation of witnesses, a party offering a witness' former testimony must establish the present unavailability of the witness. *People v. Madonna*, 651 P.2d 378 (Colo.1982); *see also* CRE 804(b)(1). In addition, there must have been a sufficient opportunity for the accused to cross-examine the witness at the former proceeding so as to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." *People v. Madonna, supra*, 651 P.2d at 385.

Here, the trial court found, on supporting evidence, that the police officer witnesses were unavailable to testify at trial. Defendant does not challenge that ruling.

Each of the police officer witnesses had testified under oath at the first trial, and defense counsel had taken full advantage of the opportunity to cross-examine them at the first trial. There is no indication that the trial court had restricted defense counsel's cross-examination of the witnesses or that the cross-examination had been inadequate. *See People v. Rael*, 40 Colo.App. 374, 578 P.2d 1067 (1978).

The testimony of the police officers was not critical to defendant's conviction. Because the officers had not seen or spoken to defendant at the crime scene, they did not provide identification testimony. For the most part, their testimony was cumulative and simply corroborated the eyewitnesses' testimony concerning the procedures followed in the photo line-ups and the preparation of the composite drawing. The evidence of defendant's guilt through the testimony of the two actual eyewitnesses, however, was overwhelming.

Based on our review of the record, we conclude that it can be said with fair assurance that, in light of the entire trial record, the transcript testimony of the police officers did not substantially influence the verdict or impair the fairness of the trial. Accordingly, we conclude that any error in admitting the officers' transcript testimony at the second trial was harmless beyond a reasonable doubt. *See People v. Madonna, supra.*

The judgments are affirmed.

PLANK and JONES, JJ., concur.