**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Paul J. VELOZ, Defendant–Appellant.**

**No. 95CA1740.**

Colorado Court of Appeals,
Div. I.

Feb. 20, 1997.

Rehearing Denied April 10, 1997.

Certiorari Denied Nov. 3, 1997.

Gale A. Norton, Attorney General, Stephen
K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Sandra K. Mills, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Karen M. Gerash, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Paul Veloz, appeals the judgment of conviction entered upon jury verdicts finding him guilty of driving under the influence (DUI) and being an habitual traffic offender. We affirm. During voir dire, one of the panel members related that, in addition to being employed as a server at a restaurant, she also worked approximately 30 hours per week as an unpaid reserve police officer on a volunteer basis. She indicated that she was not currently being paid for her work as a reserve police officer, but that she would be employed and compensated as a full-time police officer within a few weeks. She further indicated that, as a reserve officer, she had been trained in "DUI enforcement" and that she did "everything a paid officer does."

The prospective juror told the court that "all of [her] friends [were] in law enforcement," and that she had many friends who worked for the county in which the case was being prosecuted and who were present at the trial. However, she indicated that she did not know any of the officers who were listed as witnesses for defendant's trial.

The People challenged this panel member for cause without specifying the reason for the challenge. The court denied the challenge, concluding that she could be fair in spite of her "life experiences."

Upon further examination by defense counsel, the prospective juror reiterated that she performed her work as a reserve police officer for free and denied receiving any form of compensation for her efforts. She indicated that she was compensated for "off-duty jobs as a police officer," but not by the police department.

She related that she had received the same training that a compensated police officer receives and indicated that "there is no difference between [her] and a regular police officer other than the fact that [she was] not being paid." She suggested that she had opinions about "the proper way to investigate a case" and that it would be hard for her not to "be thinking about what would I do, what would I have done" concerning the investigation of the case but said, "I'm sure I could be fair and impartial." Relying on § 16–10–103(1)(k), C.R.S. (1986 Repl.Vol. 8A), defendant challenged the juror for cause, contending that she was a compensated employee of a public law enforcement agency. The court denied the challenge, concluding that, under § 13–71–104, C.R.S. (1996 Cum.Supp.), a prospective juror may not be disqualified on the basis of his or her occupation, and that by enacting § 13–71–104, the General Assembly had "eliminated" § 16–10–103(1)(k).

Defendant then challenged the panel member for cause based on an alleged inability to be fair and impartial. The trial court denied the challenge and defendant used one of his peremptory challenges to excuse the juror. After exhausting all of his statutory peremptory challenges, defendant requested an extra peremptory challenge, but the trial court declined to exercise its power to allow an additional challenge pursuant to Crim. P. 24(d)(3).

## I.

Defendant first contends that the trial court erred by refusing to excuse the juror for cause. We disagree.

At the outset, we note that prejudice is shown if, as here, the defendant exhausts all of his peremptory challenges and if, as is alleged here, one of those challenges is expended on a juror who should have been removed for cause. *People v. Macrander,* 828 P.2d 234 (Colo.1992); *People v. Prator,* 833 P.2d 819 (Colo.App.1992), *aff'd,* 856 P.2d 837 (Colo.1993).

## A.

Defendant maintains that the trial court erred in denying his statutory challenge for cause under § 16–10–103(1)(k) because the prospective juror was an employee of a public law enforcement agency. We disagree.

As pertinent here, § 16–10–103(1)(k) provides that a court must grant a challenge for cause if "the juror is ... a compensated employee of a public law enforcement agency." Initially, we hold that the trial court erroneously concluded that, by enactment of § 13–71–104, which generally prohibits discrimination against prospective jurors based on their occupation and other impermissible factors, the General Assembly "eliminated" the more specific provision in § 16–10–103(1)(k) requiring trial courts to sustain challenges for cause based on a juror's compensated employment with a law enforcement agency.

It is significant that § 16–10–103(1)(k) was enacted prior to the passage of § 13–71–104. Consequently, we assume that the General Assembly was aware of the provisions of § 16–10–103(1)(k) when it enacted § 13–71–104. *See Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993); *Rodriquez v. Nurseries, Inc.,* 815 P.2d 1006 (Colo. App.1991).

Moreover, when two statutes address the same subject matter, courts must attempt to read them together and reconcile them so as to give effect to each statute. *People v. Campbell,* 885 P.2d 327 (Colo.App. 1994); *see also Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979).

Finally, particular statutes prevail over general statutes, and, because statutory repeal by implication is not favored, a general statute will not be interpreted to repeal a conflicting special provision, unless the General Assembly clearly and unmistakably evinces its intent to do so. *Uberoi v. Univer-*

*sity of Colorado,* 686 P.2d 785 (Colo.1984); *City of Colorado Springs v. Board of County Commissioners,* 895 P.2d 1105 (Colo.App. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995).

Section 13–71–104 is part of the Uniform Jury Selection and Services Act that applies generally to all jury trials, whether civil or criminal. Section 16–10–103(1)(k), in contrast, is more specific and applies only in criminal trials. Thus, while § 13–71–104 generally prohibits the exclusion of individuals from jury service on the basis of their occupation, § 16–10–103(1)(k) requires a trial court to sustain a challenge for cause with respect to a particular group of people that the General Assembly has determined would be or, at least, appear to be biased in a criminal trial. *See People in Interest of R.A.D.,* 196 Colo. 430, 586 P.2d 46 (1978) (discussing legislative purpose of § 16–10–103(1)(k)).

We perceive no inherent conflict between these two statutory provisions, and, because the General Assembly has not clearly and unmistakably indicated that it intended to repeal § 16–10–103(1)(k) when it enacted § 13–71–104, we must presume that both statutes remain in effect. *See People ex rel. Iuppa v. District Court,* 731 P.2d 720 (Colo. 1987) (specific statute is to be given effect over subsequently enacted general statute in the absence of clear indication of legislative intent to repeal earlier provision).

■ Since we consider § 16–10–103(1)(k) as remaining in full force and effect, the dispositive issue becomes: Is a volunteer reserve police officer a "compensated employee of a public law enforcement agency" such that the officer is disqualified from jury service under the statute. We conclude that such an individual is not statutorily ineligible for jury service.

■ Our goal in construing any statute is to ascertain and give effect to the intent of the General Assembly. To determine legislative intent, we look first to the language of the statute itself, giving the words and phrases used their plain and ordinary meaning. *People v. District Court,* 713 P.2d 918 (Colo. 1986).

When the statutory language is clear and unambiguous, it must be interpreted as written, without resort to interpretive rules and statutory construction. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994).

■ Courts may not impute "their own meaning to otherwise clear statutory language." *J.D.C. v. District Court,* 910 P.2d 684, 686 (Colo.1996). Nor may we assume a legislative intent that would vary the words used by the General Assembly. *People v. Thomas,* 867 P.2d 880 (Colo.1994).

According to the plain language of § 16–10–103(1)(k), only *compensated* employees of public law enforcement agencies are statutorily ineligible for jury service. *See also People v. Coleman,* 844 P.2d 1215, 1218 (Colo. App.1992) (to fall within the statute, the individual must agree to perform services for a law enforcement agency "in consideration for compensation").

Moreover, the word "is" in the statute connotes a determination of status of the prospective juror at the time of the juror's examination on voir dire. *See Webster's Third New International Dictionary* 1197 (1986).

Here, the panel member specifically indicated that she was a volunteer reserve police officer and that she received no compensation from the police department for her work. Thus, while she anticipated being a paid employee of the police force in the future, she was not such at the time of defendant's trial. *See People v. Coleman, supra* (retired security guard who is not currently employed by public law enforcement agency not disqualified from jury service on the basis of his previous employment).

■ Moreover, the fact that she was compensated by private employers for off-duty police work did not bring her within the reach of the statute. The statute applies to compensated employees of public law enforcement agencies, not volunteers for such entities who are compensated by private employers for work similar to that performed by paid police officers.

We may not assume the General Assembly intended to include individuals who volunteer

for public law enforcement agencies, even on a nearly full-time basis, within the reach of § 16–10–103(1)(k). *See Binkley v. People,* 716 P.2d 1111, 1114 (Colo.1986) (if General Assembly intended to include unlicensed law school graduates and other persons formally trained in the law within the meaning of the term "lawyer" in § 16–10–103(1)(k), "it is reasonable to assume that it would have cast the statutory language in those specific terms and would not have used the much more restrictive word 'lawyer' in the statute"); *see also People v. Campbell, supra* (when a statute specifies the particular situations in which it is to apply, it should generally be construed as excluding from its operation all other situations not specified).

Indeed, the General Assembly has demonstrated its ability to differentiate between compensated employees and volunteers in enacting other statutes. *See* § 24–10–103(4)(a), C.R.S. (1996 Cum.Supp.) (including volunteers in definition of "public employee" in Governmental Immunity Act); § 8–40–202(1)(a)(I)(A), C.R.S. (1996 Cum.Supp.) (including certain volunteers in definition of "employee" in Workers' Compensation Act); § 6–16–103(7)(c), C.R.S. (1996 Cum.Supp.) (excluding volunteers from definition of "paid solicitor" or "professional fund raiser" in Charitable Solicitations Act). Thus, if the General Assembly had intended to include volunteers for public law enforcement agencies within this provision, it could have done so, but did not.

Finally, we recognize that under Crim. P. 24(b)(1)(XII) a trial court must sustain a challenge for cause if "the juror is an employee of a public law enforcement agency or public defender's office," regardless of whether the prospective juror is compensated for that employment. However, defendant did not raise the applicability of the rule either in the trial court or before us.

We thus conclude that the prospective juror in question here was not disqualified from jury service by § 16–10–103(1)(k), despite the fact that she performed duties similar to those of compensated law enforcement officials who could statutorily be excluded for cause. Accordingly, the trial court correctly determined, albeit for the wrong reason, that

the panel member was not ineligible for jury service on the basis of her work as a volunteer reserve police officer. Hence, it properly denied defendant's challenge for cause on that basis. *See Lindsey v. People,* 892 P.2d 281 (Colo.1995) (a correct result will be upheld on review, even if the reason for the trial court's ruling was wrong); *People v. Jenkins,* 768 P.2d 727 (Colo.App.1988) (same).

Nor do we perceive that this determination essentially amounts to finding facts, a domain that is reserved for trial courts. Rather, our determination here merely involves the application of the appropriate legal standard to the undisputed facts that appear in the record.

### B.

Defendant also contends that, even if the panel member was not statutorily ineligible for jury service under § 16–10–103(1)(k), the trial court abused its discretion in denying his challenge for cause pursuant to § 16–10–103(1)(j), C.R.S. (1986 Repl.Vol. 8A), on the basis of her alleged bias in favor of the prosecution. Again, we disagree.

Section 16–10–103(1)(j) provides that a trial court must sustain a challenge for cause if a juror has a state of mind evincing an enmity or bias towards the defendant or the prosecution. *See also People v. Schmidt,* 885 P.2d 312 (Colo.App.1994); Crim. P. 24(b)(1)(X).

■ The test for determining whether a juror should be disqualified for bias is whether the juror will render a fair and impartial verdict according to the law and the evidence presented at trial. *People v. Fuller,* 791 P.2d 702 (Colo.1990); *see also* Crim. P. 24(b)(1)(X). No juror should be dismissed for cause if the court is satisfied that the juror will render an impartial verdict. *People v. Romero,* 42 Colo.App. 20, 593 P.2d 365 (1978).

■ A court has broad discretion in ruling on challenges for cause under § 16–10–103(1)(j), and its ruling will not be disturbed on appeal absent a clear abuse of that discre-

tion. *People v. Russo,* 713 P.2d 356 (Colo. 1986); *People v. Schmidt, supra.*

■ This standard recognizes that the trial court is in the best position to assess the state of mind of a prospective juror through personal observation and the evaluation of what may appear to be inconsistent responses to difficult questions. *People v. Sandoval,* 733 P.2d 319 (Colo.1987); *see also People v. Fuller, supra* (in deciding question of juror bias, credibility and appearance of prospective jurors are best observed by the trial court).

■ In evaluating a challenge for cause, the trial court must consider the prospective juror's entire testimony. *People v. Abbott,* 690 P.2d 1263 (Colo.1984). Also, the court is entitled to give considerable weight to the juror's assurances that he or she can be fair and impartial. *People v. Sandoval, supra; People v. Ferrero,* 874 P.2d 468 (Colo. App.1993).

■ Thus, that some evidence arises during voir dire which might indicate that a potential juror is prejudiced does not require the trial court to excuse the juror for cause, provided the court is satisfied that the juror will be able to set aside his or her predisposition and render an impartial verdict according to the law and the evidence admitted at trial. *See People v. Abbott, supra; People v. Ferrero, supra.*

■ Here, the following colloquy took place between the court and the prospective juror:

> THE COURT: You've got a close connection with police officers, you're going to become one yourself, you're one in your reserve capacity.... Are you going to be able to treat police officers like anybody else?
>
> THE JUROR: Yes.
>
> THE COURT: Okay. I mean, sometimes a police officer's right, sometimes they're wrong. You've got to listen to what they say and decide whether they're right or wrong. If you sit as a juror on this trial, can you do that with an open mind?
>
> THE JUROR: I believe I can with an open mind.

> THE COURT: All right. [Would you] not give them any more credibility or any less credibility than anybody else?
>
> THE JUROR: I can do that.

In response to follow-up questions by the prosecutor, the juror initially expressed some concerns about whether she could be impartial in light of her training as a police officer. However, upon further questioning by the court regarding her ability to be fair and objectively to assess the credibility of police officers who testified at trial, the juror indicated unequivocally that there was "[n]ot a question of whether I can be fair.... I know I would make a fair decision."

Further, she reiterated that she did not know any of the officers listed as prosecution witnesses and assured the court that she would not have difficulty following the court's credibility instruction. She stated that she "would keep an open mind" and would base her decision on the facts and evidence presented at trial. And, while the juror admitted that "it would be hard because of the work I do," she was confident that she could give the defendant a fair trial.

Under all the circumstances, and taking into consideration the trial court's ability to observe the juror's demeanor and gauge the credibility of her responses, we conclude that the trial court did not abuse its discretion in determining that the voir dire revealed no actual bias on the part of this prospective juror and in denying defendant's challenge for cause.

We are not unmindful of the admonition that "[t]o insure that a jury is impartial in both fact and appearance, a prospective juror who has even a tenuous relationship with any prosecutorial or law enforcement arm of the state should be excused from jury duty in a criminal case." *People in Interest of R.A.D., supra,* 196 Colo. at 432, 586 P.2d at 47; *see also Tate v. People,* 125 Colo. 527, 538, 247 P.2d 665, 670 (1952) ("The well-reasoned cases in other jurisdictions hold that police officers and law-enforcement officials should not be allowed to serve on juries in criminal cases.").

However, as the supreme court has since noted, the "*R.A.D.* court's *dicta* respecting

disqualification of a prospective juror" because of his or her relationship with a law enforcement agency "was made in the context of a prospective juror who was a *compensated* employee of a public law enforcement agency." *People v. Rhodus*, 870 P.2d 470, 476 (Colo.1994) (emphasis added).

 Moreover, we may not infer bias on the part of this particular juror merely because of her uncompensated work as a reserve police officer. The circumstances under which a prospective juror will be disqualified from jury service on the basis of a bias "attributable in law to a prospective juror regardless of actual partiality" are limited to those expressly delineated by the General Assembly in § 16–10–103(1), C.R.S. (1986 Repl.Vol. 8A). *People v. Rhodus, supra,* 870 P.2d at 473.

The supreme court has recently rejected the view that implied bias, apart from the statutory scheme, may be used to create an automatic exclusion. *See People v. Rhodus, supra* (county clerk and recorder not disqualified automatically because her office is represented in legal matters by the county district attorney's office). The court also specifically rejected the notion that a prospective juror must be disqualified from jury service on the basis of his or her contacts with law enforcement agencies that do not require the juror's automatic disqualification under § 16–10–103(1).

Thus, while we would have reached a contrary result with respect to this prospective juror, our review of the record does not reveal the clear abuse of discretion required to set aside the trial court's ruling. *See People v. Rhodus, supra; People v. Vigil*, 718 P.2d 496 (Colo.1986); *People v. Zurenko*, 833 P.2d 794 (Colo.App.1991).

## II.

Defendant next contends that the trial court erred in denying his motion to suppress statements he made to police both before his arrest and after he had been arrested and advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Again, we disagree.

 When a criminal defendant moves to suppress a confession or inculpatory statement, the prosecution must establish by a preponderance of the evidence that the statement was voluntarily made. A defendant's statement is involuntary if coercive governmental conduct played a significant role in inducing the statement. *People v. Gennings*, 808 P.2d 839 (Colo.1991). In evaluating the voluntariness of the defendant's statement, the trial court must consider the totality of the circumstances under which the statement was made. *People v. Rhodes*, 729 P.2d 982 (Colo.1986).

 Here, the arresting officer testified at the suppression hearing that when he arrived at the scene of the accident, defendant was "stumbling around" in a nearby field. The officer illuminated defendant with the spotlight on the patrol car and defendant began walking toward the officer. When the officer got out of his car and began walking toward defendant, defendant raised his hands and spontaneously made statements suggesting that he had been the driver of the vehicle. The officer testified that he had not made any comments to defendant and had not asked him any questions eliciting the statements. There is no dispute that defendant was extremely intoxicated when he made these statements.

The officer further testified that, after advising defendant of his *Miranda* rights, defendant indicated that he "understood his rights" and that he was willing to talk to the officer without a lawyer present. Defendant then made additional inculpatory statements in response to the officer's questions. The officer indicated that, while defendant still appeared to be intoxicated, he was cooperative, seemed coherent, and was able to communicate intelligently. The officer further testified that he did not threaten or intimidate defendant and that he did not otherwise force or coerce him into making the statements.

At the conclusion of the suppression hearing, the trial court denied defendant's motion to suppress both the statements he made at the scene of the accident and the statements he made after being advised of his rights. More specifically, the court found that the

pre-arrest statements were made spontaneously and were not the product of an improper custodial interrogation. With respect to the post-advisement statements, the court found that defendant had been fully advised of his rights and had made the statements voluntarily.

Defendant maintains that the statements he made at the scene of the accident were the product of a custodial interrogation. He thus claims that the trial court erred in concluding that the statements were voluntary and in denying his motion to suppress those statements.

■ The determination whether a person is in custody turns on an objective assessment of whether a reasonable person in the defendant's position would believe himself or herself to be deprived of freedom of action in any significant way. *People v. Viduya*, 703 P.2d 1281 (Colo.1985); *see also People v. Wallace*, 724 P.2d 670 (Colo.1986).

■ Whether the defendant was in custody when he or she made inculpatory statements is a question of fact which must be resolved by the trial court, and we will not disturb its determination if it is supported by competent evidence in the record. *People v. Dracon*, 884 P.2d 712 (Colo.1994).

The evidence presented at the suppression hearing does not support defendant's assertion that he was subjected to a custodial interrogation when he made the pre-arrest statements. Rather, the record amply supports the trial court's determination that the statements were spontaneously and voluntarily made. *See People v. Hammons*, 771 P.2d 1 (Colo.App.1988); *People v. White*, 632 P.2d 609 (Colo.App.1981).

■ We also reject defendant's contention that the trial court erred in denying his motion to suppress both the pre-arrest and post-advisement statements because he was too intoxicated to have made them voluntarily. *See Ballay v. People*, 160 Colo. 309, 419 P.2d 446 (1966) (statements were not inadmissible merely because defendant was intoxicated when he made them).

The judgment is affirmed.

METZGER, J., concurs.

NEY, J., concurs in part and dissents in part.

Judge NEY concurring in part and dissenting in part:

I concur in part II of the majority opinion. However, I dissent as to part I and, thus, would reverse the judgment and remand for a new trial.

Because, as the majority correctly concludes, the trial court erroneously determined that § 13–71–104, C.R.S. (1996 Cum. Supp.) "eliminated" the specific provisions in § 16–10–103(1)(k), C.R.S. (1986 Repl.Vol. 8A) requiring the court to grant a challenge for cause if the challenged juror is "a compensated employee of a public law enforcement agency," the trial court did not apply the standard set forth in § 16–10–103(1)(k). Although I concur with the majority's use of that standard, I would conclude that the undisputed facts contained in the record are, at best, ambiguous regarding whether, at the time of defendant's trial, the prospective juror was the functional equivalent of a compensated employee of a public law enforcement agency who should have been excused as a matter of law pursuant to § 16–10–103(1)(k).

In my opinion, the voir dire of the prospective juror (the content of which is undisputed) does not, as a matter of law, compel the conclusion that the challenge for cause to this juror should have been denied.

The prospective juror testified that she had been a reserve police officer for approximately one year prior to the trial, had attended the police academy in her capacity as a reserve officer, and, at the time of voir dire, was working approximately 30 hours per week in that capacity. She further testified that she performed the same duties as a police officer, viewed herself as a career police officer, and that she, as a reserve officer, accepted compensated off-duty jobs. The substance of her testimony strongly implies that these off-duty jobs were available to the prospective juror solely because she was a reserve police officer.

**534**

She testified, moreover, that she had attained her goal as a reserve officer by obtaining a full-time compensated position with the police department that was scheduled to commence within the month during which voir dire was conducted. It appears to me that the prospective juror's acceptance of the offer for compensated employment as a police officer brought her within the provisions of § 16–10–103(1)(k).

Both the prosecution and the defense unsuccessfully challenged the prospective juror for cause.

Nevertheless, the majority concludes that the prospective juror was not a "compensated employee of a public law enforcement agency" under § 16–10–103(1)(k). Such conclusion follows here only if one considers this active reserve police officer to retain her objectivity until she begins her compensated employment as a police officer. I cannot accept such a scenario.

Furthermore, the trial court here did not apply the § 16–10–103(1)(k) standard, and even if it had, based on the facts developed in voir dire, the denial of defendant's challenge for cause may still have constituted an abuse of discretion.

In my opinion, under the facts here, the determination whether the juror was "a compensated employee of a public law enforcement agency" cannot be made as a matter of law and, because the trial court did not make factual findings in this regard, this court may not do so. *See M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994) (absent certain circumstances, such as when the undisputed facts are presented to the trial court by stipulation, an appellate court does not decide facts).

I would also conclude that Crim. P. 24(b)(1)(XII), requiring a court to sustain a challenge for cause if the challenged juror is "an employee of a public law enforcement agency or public defender's office," compels the court to sustain a challenge for cause of this prospective juror.

In the alternative, I would conclude, in view of the prospective juror's responses, that the trial court abused its discretion in denying defendant's challenge for cause un-der § 16–10–103(1)(j) based on alleged juror bias.

I would, therefore, reverse defendant's conviction and order a new trial.