The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 28, 2026

**2026 COA 40**

**No. 24CA1169, *People v. Marceleno* — Criminal Law — Sentencing — Assessment of Restitution — Non-felony Conviction Under Title 42**

A division of the court of appeals examines whether section 18-1.3-603(8), C.R.S. 2025 — which limits restitution when a victim's loss is covered by insurance — applies to the defendant's convictions. The defendant contends that the district court was obligated under subsections (8)(b) and (8)(c) to determine whether the damaged car was covered by insurance before ordering restitution and asserts that the court improperly shifted the burden to the defense to present evidence on this issue.

Interpreting section 18-1.3-603(8) as a whole and giving all its provisions consistent, harmonious, and sensible effect, the division concludes that the limitation in subsection (8)(a) — restricting application to non-felony convictions under title 42 — applies to all

of section 18-1.3-603(8).  Accordingly, the division disagrees with the dicta in *People v. Lockett*, 2025 COA 1, ¶ 18, that "subsection (8)(a) pertains only to title 42 non-felony offenses, whereas subsection (8)(c) pertains to all types of offenses."

Because none of the defendant's convictions fall under title 42, section 18-1.3-603(8) does not apply in this case.  And because the division rejects the defendant's remaining arguments, it affirms the restitution order.

Court of Appeals No. 24CA1169
Weld County District Court No. 22CR293
Honorable Timothy Kerns, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Danny Marceleno,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

Announced May 28, 2026

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Chelsea A. Carr, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1 Danny Marceleno appeals the district court's restitution order entered following his convictions for reckless endangerment, vehicular eluding, and criminal mischief — offenses arising from a high-speed chase in which he fled from police. He challenges the restitution awarded for damage to a car and a gate sustained when he crashed.

¶ 2 One of the central questions in this appeal is whether section 18-1.3-603(8), C.R.S. 2025 — which limits restitution when a victim's loss is covered by insurance — applies to Marceleno's convictions. Marceleno argues that the district court was obligated under subsections (8)(b) and (8)(c) to determine whether the damaged car was covered by insurance before ordering restitution and asserts that the court improperly shifted the burden to the defense to present evidence on this issue.

¶ 3 Reading section 18-1.3-603(8) as a whole and giving its provisions consistent, harmonious, and sensible effect, we conclude that the limitation in subsection (8)(a) — which restricts its application to non-felony convictions under title 42 — applies to the entirety of section 18-1.3-603(8). In so holding, we disagree with the dicta in *People v. Lockett*, 2025 COA 1, ¶ 18, that "subsection

1

(8)(a) pertains only to title 42 non-felony offenses, whereas subsection (8)(c) pertains to all types of offenses."

¶ 4     Because none of Marceleno's convictions fall under title 42, the district court correctly determined that section 18-1.3-603(8) is inapplicable to this case. And because we discern no other basis to disturb the restitution order, we affirm.

## I.     Background

¶ 5     Sheriff's deputies found Marceleno and his girlfriend asleep inside a stolen car. When ordered to get out of the car, Marceleno sped off, leading deputies on a chase that ended when he lost control of the car and crashed into the gate at the entrance of Patterson Farms, a gated community. A jury convicted him of two counts of reckless endangerment and one count each of vehicular eluding and criminal mischief. The district court sentenced him to nine years in the custody of the Department of Corrections.

¶ 6     The prosecution sought $26,439.99 in restitution: $6,440 to the car owner for damage sustained in the crash; $18,999.99 to State Farm to reimburse it for its payment to the Patterson Farms Homeowners' Association (HOA) for replacing the damaged gate; and $1,000 to the HOA for its insurance deductible. Marceleno did

not contest the deductible but objected to the restitution sought for the car owner and State Farm.

¶ 7 During the restitution hearing, the prosecution relied on evidence presented at trial. That evidence included public records showing the owner purchased the car for $7,998 on August 8, 2020, plus $239.94 in use tax and $247.14 in fees. The arresting officer also testified that the car was towed from the crash site and that he estimated its value at between $5,840 and $6,400 based on the Kelley Blue Book. At the restitution hearing, the prosecution confirmed — and defense counsel did not dispute — that the car was totaled.

¶ 8 The prosecution also presented evidence that State Farm paid the HOA $21,300 to replace the gate. At the time of trial, the gate had not been fully repaired or made operational, but the HOA had already spent $11,500 on repairs, excluding labor costs not yet billed. The HOA representative testified that the HOA would "most likely" have little remaining from State Farm's payment. He further testified that State Farm required the HOA to restore the gate to its pre-accident condition and denied that the replacement gate differed materially from the original. He acknowledged that the

3

replacement gate had "slightly different" lights and paint but stated that the HOA did its "best to repair it . . . as close as [it] could to the original." The HOA also added extra supports to the replacement gate.

¶ 9 At the conclusion of the hearing, the district court awarded $17,940 in restitution: $6,440 to the car owner, $10,500 to State Farm for the gate, and $1,000 to the HOA for the uncontested deductible. In doing so, the court made two rulings relevant to this appeal.

¶ 10 First, the district court addressed which party bore the burden of proving the existence of insurance coverage for the damaged vehicle. It held that the prosecution bore no such burden because section 18-1.3-603(8) applies only to restitution orders arising from non-felony convictions under title 42. Instead, the court treated any insurance payment as a setoff and placed the burden of establishing that setoff on Marceleno. With no evidence of insurance coverage in the record, the court found it "more likely than not" that the vehicle's value exceeded $6,440 — it had been purchased just one year earlier for almost $8,000, and the damage

4

was extensive, rendering it inoperable.  Accordingly, the court ordered Marceleno to pay $6,440 in restitution to the car owner.

¶ 11    Second, the district court found that Marceleno was the proximate cause of the gate damage based on the jury's findings and the evidence presented at trial.  Based on the HOA representative's trial testimony, the court further found that the HOA had spent at least $11,500 on gate repairs, including $1,000 on the deductible.  The court ordered restitution of $10,500 to State Farm for the gate and $1,000 to the HOA for the deductible, finding those amounts "consistent in the minimum with what the jury found and the class of offense that was found" and with the HOA representative's testimony regarding the HOA's expenditures as of the time of trial.

## II.    Restitution to the Car Owner

¶ 12    Marceleno contends that the district court erred by awarding restitution to the car owner because the court was statutorily obligated under section 18-1.3-603(8) to consider whether the damage to the car was covered by any insurance policy and erroneously shifted the burden to the defense to present evidence

concerning this matter.  Because section 18-1.3-603(8) does not apply to Marceleno's convictions, we disagree.

### A.  Standard of Review and Applicable Statute

¶ 13    We review de novo questions of statutory interpretation. *People v. Weeks*, 2021 CO 75, ¶ 24.  In construing a statute, we give effect to the General Assembly's intent, looking first to the statutory language and "giving its words and phrases their plain and ordinary meaning." *Id.* at ¶¶ 24-25 (quoting *McCulley v. People*, 2020 CO 40, ¶ 10).  We also read the statute "as a whole, giving consistent, harmonious, and sensible effect to all of its parts" while avoiding constructions that "render any words or phrases superfluous or lead to illogical or absurd results." *McCoy v. People*, 2019 CO 44, ¶ 38.  When the statutory language is clear and unambiguous, we apply it as written. *People v. Baker*, 2019 CO 97M, ¶ 13.

¶ 14    The Restitution Act requires a convicted offender to financially compensate crime victims for the harm they suffered as a result of the offender's conduct.  §§ 18-1.3-601 to -603, C.R.S. 2025.  "The purpose of restitution is to make the victim whole, and the Restitution Act is to be 'liberally construed' to accomplish that purpose." *People v. Stone*, 2020 COA 24, ¶ 5 (citation omitted).

¶ 15    Section 18-1.3-603(8) sets forth special rules when the victim's loss may be covered, in whole or in part, by insurance.  Subsection (8)(a) begins by stating,

> Notwithstanding the provisions of subsection (1) of this section,[1] for a non-felony conviction under title 42, C.R.S., the court shall order restitution concerning only the portion of the victim's pecuniary loss for which the victim cannot be compensated under a policy of insurance, self-insurance, an indemnity agreement, or a risk management fund.

§ 18-1.3-603(8)(a).  Title 42 governs the regulation of vehicles and traffic; Marceleno was not convicted for any offenses appearing within that title.

¶ 16    Subsection (8)(b) requires courts to consider whether "the defendant or the vehicle driven by the defendant at the time of the offense" was covered by (1) "[a] complying policy of insurance or

---

[1] Section 18-1.3-603(1), C.R.S. 2025, provides that "[e]very order of conviction of a felony, misdemeanor, petty offense, or traffic misdemeanor offense, except any order of conviction for a state traffic misdemeanor offense issued by a municipal or county court in which the prosecuting attorney is acting as a special deputy district attorney pursuant to an agreement with the district attorney's office, must include consideration of restitution."  It then requires the court to issue one of four types of restitution orders. § 18-1.3-603(1)(a)-(d), C.R.S. 2025; *Snow v. People*, 2025 CO 32, ¶ 20.

certificate of self-insurance"; (2) "[s]elf-insurance"; or (3) "[a]ny other insurance or indemnity agreement." § 18-1.3-603(8)(b).

¶ 17    Subsection (8)(c)(I) provides that a court may not award restitution to a victim if the victim received or is entitled to receive benefits or reimbursement under a policy of insurance or other indemnity agreement. However, a court may award restitution for a deductible under the victim's own insurance policy. § 18-1.3-603(8)(c)(II)(A).

¶ 18    The remaining provisions of section 18-1.3-603(8) discuss (1) restitution awards for nonowner drivers or passengers; (2) an insurance company's lack of obligation to represent a defendant at a restitution hearing, pay or otherwise satisfy a civil judgment, or indemnify a defendant for an amount awarded in a restitution order; (3) the retention of the rights and immunities provided for in the Colorado Governmental Immunity Act; and (4) a district court's continued ability to order restitution reimbursement for victim compensation funds. *See* § 18-1.3-603(8)(d)-(g).

B.    Analysis

¶ 19    Marceleno contends that the district court erred by awarding restitution to the car owner. Specifically, he argues that because

the court found subsection (8)(c)(I) inapplicable to his title 18 convictions, it improperly shifted to him the burden of proving that the owner had received, or was entitled to receive, benefits or reimbursement under a policy of insurance. *But see People v. Stanley*, 2017 COA 121, ¶ 17 (noting that "the defendant bears the burden of proving any setoff" in a restitution proceeding); *People v. Lassek*, 122 P.3d 1029, 1035 (Colo. App. 2005) (concluding that the defendant bears the burden of proving the amount of a statutory setoff or decrease in restitution), *overruled on other grounds by*, *Sullivan v. People*, 2020 CO 58.

¶ 20  In support, Marceleno relies on two statutory provisions: subsection (8)(b)'s requirement that the court consider whether the vehicle he drove at the time of the offense was covered by insurance and subsection (8)(c)(I)'s limitation on the court's ability to award restitution if the car owner received or was eligible to receive reimbursement from an insurance company. Taken together, he contends, these provisions placed the burden on the prosecution to present evidence of the car owner's insurance coverage or lack thereof.

¶ 21    Marceleno's interpretation, however, ignores the very first provision of this subsection — subsection (8)(a) — which expressly limits its application to "non-felony conviction[s] under title 42." § 18-1.3-603(8)(a). Because none of his convictions fall under title 42, section 18-1.3-603(8) — including subsections (8)(b) and (8)(c) — does not apply to him.

¶ 22    We acknowledge that the limiting language of subsection (8)(a) is not expressly repeated in the remaining subsections. Nevertheless, reading subsection (8) as a whole and giving its parts consistent, harmonious, and sensible effect, we conclude that the limitation in paragraph (a) applies to the entirety of section 18-1.3-603(8). *See People v. Yoder*, 2016 COA 50, ¶ 17 (statutes must be read as a whole to discern the meaning and purpose of their language).

¶ 23    The consistent use of title 42-specific terminology throughout the subsections — terms like "driver," "passenger," and "vehicle" — signals the General Assembly's intent to confine the entirety of section 18-1.3-603(8) to non-felony convictions under title 42. *See* § 18-1.3-603(8)(b) (instructing courts to consider whether the defendant or the "vehicle driven by the defendant" was covered by

10

insurance); § 18-1.3-603(8)(d)(II) (addressing restitution for a "nonowner driver or passenger in the vehicle").

¶ 24     Moreover, by placing the title 42 limitation in the first part of subsection (8), the General Assembly signaled that the paragraphs to follow are similarly confined — and not, as Marceleno suggests, applicable to convictions under other titles. *Cf. People v. Campbell*, 885 P.2d 327, 329 (Colo. App. 1994) ("[W]hen a statute specifies the particular situations in which it is to apply, it should generally be construed as excluding from its operation all other situations not specified.").

¶ 25     We are not persuaded otherwise by *Lockett*. In that case, a division of this court considered whether restitution could be ordered for insurance companies under subsection (8)(a) in cases involving non-felony convictions under title 42. *Lockett*, ¶¶ 2, 8. In passing, the division observed that "subsection (8)(a) pertains only to title 42 non-felony offenses, whereas subsection (8)(c) pertains to all types of offenses." *Id.* at ¶ 18. But the division in *Lockett* did not explain why subsection (8)(c) pertained to "all types of offenses," nor was it tasked with addressing that question. *Id.* Instead, the division's narrow task was to interpret subsection (8)(a) and decide

11

whether the General Assembly intended to limit recovery for insurance companies under that subsection. *See id.* at ¶¶ 2, 8. Nevertheless, to the extent *Lockett* can be interpreted as supporting a conclusion that subsection (8)(c) applies to all types of offenses, we respectfully disagree for the reasons previously articulated. *See Campbell v. People*, 2020 CO 49, ¶ 41 (a division of the court of appeals is not bound by the decision of another division).

¶ 26    Nor are subsections (8)(a) and (8)(c) rendered redundant by limiting both provisions to non-felony convictions under title 42. Subsection (8)(a) establishes a broad rule that, for non-felony convictions under title 42, the court may order restitution only for losses "for which the victim cannot be compensated under a policy of insurance, self-insurance, an indemnity agreement, or a risk management fund." § 18-1.3-603(8)(a). Subsection (8)(c), on the other hand, restates a portion of this rule — for "a policy of insurance or other indemnity agreement" — before clarifying that this broad prohibition does not apply to a victim's "deductible amount under his or her policy of insurance." § 18-1.3-603(8)(c)(I)-

12

(II)(A).[2] Interpreting subsection (8)(c) to apply to "all types of offenses," as *Lockett* suggests, would render subsection (8)(c)(II)(A) superfluous because section 18-1.3-603(2)(b)(II) already provides for "[r]eimbursement for insurance deductibles, including deductibles for . . . automobile damage or loss." Thus, subsections (8)(a) and (8)(c) serve distinct purposes despite their partial overlap. *See Lockett*, ¶ 18 (concluding for different reasons that, "despite some overlap, the subsections aren't redundant").

¶ 27    Accordingly, because we conclude that section 18-1.3-603(8) applies only to non-felony convictions under title 42, the district

---

[2] Before it was amended in 2004, subsection (8)(c) contained a second exception permitting restitution for personal injury protection (PIP) benefits "only if the court finds that the defendant on the date of the offense did not meet state compulsory insurance requirements." § 18-1.3-603(8)(c)(II)(B), C.R.S. 2003. When the General Assembly repealed the Colorado Auto Accident Reparations Act and its PIP provisions, it deleted subsection (8)(c)(II)(B) and removed the reference to PIP benefits in subsection (8)(c)(I). Ch. 255, sec. 28, § 18-1.3-603(8)(c)(I), (II)(B), 2004 Colo. Sess. Laws 904. The prior PIP-specific language confirms that subsection (8)(c) was designed with title 42 traffic offenses in mind — not criminal convictions generally. *See Murphy v. Dairyland Ins. Co.*, 747 P.2d 691, 694 (Colo. App. 1987) ("The Auto Reparations Act generally requires 'every owner of a motor vehicle,' who operates, or who allows the operation of, that vehicle on the public highways of this state, to have in full force and effect an insurance policy providing the PIP benefits described in that statute." (citation omitted)).

court correctly determined that subsection (8)(c)(I) is inapplicable to Marceleno's convictions. And because Marceleno raises no separate challenge to the amount of restitution ordered for damage to the car, we affirm this portion of the restitution order.

### III.    Restitution to State Farm

¶ 28    Marceleno contends that the district court erred by awarding restitution to State Farm because (1) his actions were not the proximate cause of the HOA's upgrades to the gate, and (2) the evidence was insufficient to support the amount of restitution ordered. We are not persuaded.

### A.    Standard of Review and Applicable Law

¶ 29    We review for clear error a district court's proximate cause determination for restitution. *Martinez v. People*, 2024 CO 6M, ¶ 3. We "must affirm the district court's findings unless they are without 'support in the record.'" *Id.* at ¶ 34 (citation omitted).

¶ 30    "A defendant convicted of a felony offense must pay restitution for any pecuniary loss he proximately caused his victim." *Id.* at ¶ 13. Proximate cause in the restitution context means "any 'cause which in natural and probable sequence produced the claimed injury.'" *Id.* (citation omitted). The prosecution bears the burden of

proving by a preponderance of the evidence that the defendant proximately caused the victim's losses.  *Stone*, ¶ 6.

¶ 31   Restitution encompasses "any pecuniary loss suffered by a victim," including but not limited to "all out-of-pocket expenses," "anticipated future expenses," and "other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2025.

## B.   Analysis

¶ 32   Marceleno contends that the evidence was insufficient to establish that he proximately caused the HOA's gate upgrade expenses — specifically, the addition of extra supports.  He relies on *People v. Reyes* for the proposition that his conduct merely exposed an existing structural vulnerability, and therefore the cost of its reinforcement is not compensable in restitution.  166 P.3d 301, 304 (Colo. App. 2007), *superseded by statute on other grounds*, Ch. 318, sec. 2, § 18-1.3-204(1), 2002 Colo. Sess. Laws 1378, Ch. 232, sec. 1, § 16-18.5-103(1), 2000 Colo. Sess. Laws 1032, *as recognized in*, *Martinez*, ¶¶ 16-17.

15

¶ 33    *Reyes* is distinguishable.  There, a division of this court reversed a restitution award to a burglary victim who had purchased interior locks as a precautionary measure against future break-ins.  *Id.* at 304.  The division concluded that the defendant's conduct did not create or increase the risk of future burglaries but rather "merely exposed an existing vulnerability."  *Id.*  Here, by contrast, the HOA representative testified that State Farm required the HOA to restore the gate to the "exact standards as it was before the accident" and that the HOA did its "best to repair it . . . as close as [it] could to the original."  He further testified that, at the time of trial, the HOA had spent $11,500 of the $21,300 it received from State Farm — an amount that did not yet include labor costs.  With repairs still outstanding, he did not expect there would be "much left over from the check from State Farm."  Thus, even if the extra supports were included in the $11,500 repair cost, the record does not support the finding that State Farm was placed in a better financial position than before the crime.  *See People v. Perez*, 2017 COA 52M, ¶ 19.

¶ 34    We likewise reject Marceleno's contention that the evidence was insufficient to establish the $11,500 repair cost because the

16

prosecution submitted no documentation or invoices and relied solely on the HOA representative's trial testimony. This argument goes to the weight of the evidence, not its sufficiency. *See People in Interest of A.V.*, 2018 COA 138M, ¶ 29 ("As the fact finder, the court had the authority to determine the weight of the evidence[ and] the witnesses' credibility . . . ."). The district court considered and rejected this argument, finding that the HOA representative's testimony left "no question" that the HOA had spent $11,500 of the State Farm payment on repairs by the time of trial. Weighing the evidence was squarely within the district court's province, and we will not disturb the restitution order on this basis.

¶ 35 Finally, we reject Marceleno's contention that he did not proximately cause State Farm's alleged "overpayment" to the HOA. He argues that the prosecution failed to produce the cost breakdowns or internal analyses underlying State Farm's payment determination. But even assuming State Farm's payment constituted an overpayment, the district court did not award that amount. Rather, the court concluded that "being conservative on this issue [was] probably more prudent" and ordered an amount less than half of what State Farm paid the HOA. The trial evidence

17

established that the HOA spent $11,500 repairing the gate. Marceleno does not dispute that he destroyed the gate and concedes responsibility for the HOA's $1,000 deductible. We cannot say the court clearly erred by ordering him to pay $10,500 to State Farm and $1,000 to the HOA.

¶ 36    The record supports the district court's finding that Marceleno's conduct proximately caused the losses sustained by State Farm.

## IV.    Disposition

¶ 37    The restitution order is affirmed.

JUDGE GROVE and JUDGE SCHOCK concur.